**Joseph J. REY et al., Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No.73–1283**

**Summary Calendar.\***

United States Court of Appeals, Fifth Circuit.

Sept. 11, 1973.

---

\* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Joseph J. Rey, El Paso, Tex., for plaintiffs-appellants.

William S. Sessions, U. S. Atty., Edward S. Marquez, Asst. U. S. Atty., El Paso, Tex., Morton Hollander, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

■ Joseph J. Rey, Edna H. Rey, and C. Richard Tinguely appeal from the dismissal, as statutorily barred, of their complaint against the United States under the Federal Tort Claims Act, Title 28, U.S.C., Sections 1346(b), 2671 through 2680. Accepting, as we must, e. g., John Walker & Sons v. Tampa Cigar Co., 5 Cir. 1952, 197 F.2d 72, the truth of plaintiffs-appellants' allegations, we note the following sequence of events as disclosed by the pleadings.

In April 1969, plaintiff-appellant Joseph J. Rey was a contractor with the United States for the removal of edible garbage from the U.S. Military Reservation at Fort Bliss, Texas. Rey used the garbage removed under the contract to feed hogs belonging to Rey and plaintiff-appellant Tinguely. The contract specified that routine inspection and testing of the garbage removal operation was to be performed by Dr. L. E. Moffit of the Animal Health Division, United States Department of Agriculture. The contract also required that Dr. Moffit be notified if more than a usual number of plaintiffs' hogs died.

On April 21, 1969, sixteen of plaintiffs' hogs died, and Rey immediately notified Dr. Moffit. Dr. Moffit examined the carcasses, and with Rey's permission destroyed three additional hogs of different ages and from different pens to test for hog cholera infection in the herd. Dr. Moffit promised he would notify plaintiffs and their veterinarian promptly of the test results. On April 30, 1969, Dr. Moffit notified plaintiffs that the hogs were infected with hog cholera, and imposed a quarantine on the hogs.

At that time, a live virus vaccine was available for hog cholera. Use of the vaccine was hazardous, however, as the vaccine could cause otherwise uninfected hogs to contract fatal hog cholera.

Upon receipt of the April 30 notice from Dr. Moffit, and after consultation with their own veterinarian, plaintiffs proceeded to inject their hogs with the live vaccine. As a result of the inoculations, a large number of plaintiffs' hogs died. Plaintiffs Joseph and Edna Rey lost 415 hogs, with an asserted market value of $21,580; plaintiff Tinguely lost 185 hogs with a claimed market value of $7,400.

In point of fact, still according to plaintiffs' allegations, Dr. Moffit did not receive the laboratory test results until May 19, 1969; these results indicated that plaintiffs' hogs were *not infected* with hog cholera. Plaintiffs alleged additional delay before the correct test results were communicated to them.

Plaintiffs filed their complaint in the lower court on January 6, 1971. The complaint alleged that Dr. Moffit, as an employee of the government, ordered the herd of hogs quarantined at the time the initial testing was done, and that the fatal vaccinations were performed because of the quarantine. The complaint alleged, inter alia, negligence in failing to notify plaintiffs within a reasonable time that their hogs were not subject to quarantine, negligence in certifying that the hogs had cholera, and negligence in not notifying plaintiffs of the proper diagnosis. On March 12, 1971, the government answered, denying plaintiffs' allegations of negligence.

On January 5, 1972, the government filed a motion to dismiss on the grounds that plaintiffs' claim was barred by the statutory quarantine exception to the Federal Tort Claims Act, Title 28, U.S. C., Section 2680(f).[1] On July 31, 1972, plaintiffs filed a motion and affidavit controverting the government's motion to dismiss, asserting that their claim rested upon the "negligent operational activities of the defendant" and not upon "the imposition or establishment of a quarantine."

On July 31, 1972, the matter came on for hearing in the court below. In response to the district court's concern that plaintiffs' complaint charged negligent imposition of a quarantine, barred by Section 2680(f), plaintiffs renewed their position that the complaint was based on Dr. Moffit's negligence in stating that the hogs had cholera, not on damages arising from the effects of a quarantine. The district court thereupon ordered the parties to get together a stipulation of the facts by August 4, so that the court could speedily dispose of the case. No such stipulation was ever filed.

Instead, on August 3, 1972, in response to the trial court's expressed concern that plaintiffs' claim was barred by Section 2680(f), plaintiffs filed an amended complaint with leave of court. The amended complaint omitted any reference to the imposition of any quarantine, and proceeded on the theory that plaintiffs' damages were proximately caused by the negligence of Dr. Moffit in his actions concerning the diagnosis and testing for hog cholera. The law suit lapsed into quiescence for several months. On December 14, 1972, without further hearing of any sort, and without government response by motion or otherwise to the amended complaint, the district court dismissed plaintiffs' suit *sua sponte* stating that the claim was "a claim caused by the imposition or establishment of a quarantine by the United States," and hence barred by Title 28, U.S.C., Section 2680(f).[2]

---

1. Section 2680. Exceptions:
 "The provisions of this chapter and section 1346(b) of this title shall not apply to—
  \*    \*    \*    \*    \*
 (f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States."

2. The complete text of the district court's dismissal order follows: (Caption Omitted)
 "Came on to be heard the above cause, and the Court having considered the pleadings and the Motion of the Defendant to Dismiss, and the Plaintiffs' controverting Motion and argument of counsel, does find that said Motion to Dismiss

We affirm but for a different reason than that stated by the trial court. We do so despite our disapproval of the district court's rather cavalier dismissal without holding a further hearing on the issues raised by the amended complaint. This is the unusual case where dismissal on the barebone pleading—as augmented here by appellant Rey's affidavit—is not fatal error.[3]

■ Insofar as the original complaint alleged that plaintiffs-appellants suffered damage because Dr. Moffit incorrectly imposed a quarantine, we agree with the court below that such claims are barred by Title 28, U.S.C., Section 2680(f). Allegations of negligence in the procedures, either through diagnosis or testing, by which Dr. Moffit arrived at a decision to impose a quarantine would also be barred by Section 2680(f). Dalehite v. United States, 1953, 346 U.S. 15, 32, 73 S.Ct. 956, 966, 97 L.Ed. 1427, 1439 (dictum). But we construe the Section 2680(f) quarantine bar to apply only to damages proximately caused by the "imposition or establishment of a quarantine,"[4] such as loss in value occasioned by physical restraint on stock for a period of time or losses caused by the forced exposure of healthy animals to diseased animals within the quarantine area. Damages incidental to the quarantine itself, for example, damage caused by the negligent operation of a motor vehicle during the quarantine inspection process, would not in our judgment be barred by Section 2680(f).

But plaintiffs-appellants' amended complaint, filed with written permission of the trial court, alleged a cause of action not related to the "imposition or establishment of a quarantine by the United States," and hence not barred on the face of the complaint by Title 28, U.S.C., Section 2680(f). Alleging as it did negligence in both the diagnosis and testing of appellants' hogs, the amended complaint claimed damage proximately resulting from negligent actions by Dr. Moffit. Damage proximately resulting from quarantine status was not alleged. These allegations of negligence of the amended complaint were not alluded to and apparently not considered by the trial judge when he dismissed the plaintiffs' complaint.[5]

The government did not raise the point below, but now contends that appellants' amended claim is barred by Title 28, U.S.C., Section 2680(h), the misrepresentation exception to the Tort Claims Act.[6]

■ We think this exception bars appellants' restated claim. Reading the amended complaint in the fashion most favorable to plaintiffs, John Walker & Sons v. Tampa Cigar Co., supra, it charges that Dr. Moffit negligently and erroneously notified plaintiffs that the hogs were infected with hog cholera, and that such negligent notification proxi-

---

should be granted for the reason that said cause of action is barred by Title 28 U.S. C.A., Section 2680(f), in that the claim for damages as alleged and set out in the controverting motion is a claim caused by the imposition or establishment of a quarantine by the United States.

ENTERED THIS 14th day of December, 1972.
/s/ Ernest Guinn
United States District Judge"

3. Cf., for example, Cook & Nichol, Inc. v. Plimsoll Club, 5 Cir. 1971, 451 F.2d 505, 506, and cases cited; Barber v. M/V "Blue Cat", 5 Cir. 1967, 372 F.2d 626, and especially cases cited, Note 1, page 627.

4. A fair reading of Section 2680(f)—"Any claim for *damages caused by* the imposition

or establishment of a quarantine by the United States" (emphasis added)—renders that section a bar only to damages proximately resulting from quarantine status.

5. Note 2, supra.

6. Section 2680. Exceptions:
"The provisions of this chapter and section 1346(b) of this title shall not apply to—
*    *    *    *    *
(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights." (emphasis added)

mately caused Rey to have administered the serum which caused the death of the hogs.[7] The amended complaint centered its allegations upon negligent transmission of erroneous misinformation to plaintiffs-appellants. Whatever the additional allegations of negligence in the defendant United States' operations, the negligently erroneous transmission of misinformation is the crucial element in the chain of causation from defendant's negligence to plaintiffs' damages. It is the key fact to be established, the *sine qua non*, of the theory of the amended complaint. Barred by the quarantine exception, Section 2680(f), from proceeding with their original theory, appellants' change of direction leaves them still statutorily barred. Misrepresentation, although asserted in terms of negligence, is the tortious act now relied on for recovery.

But Section 2680(h) bars claims arising out of *negligent* misrepresentation as well as claims arising out of intentional misrepresentation. United States v. Neustadt, 1961, 366 U.S. 696, 701–702, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614, 619. In a case bearing striking resemblance to the case at bar, Hall v. United States, 10 Cir. 1959, 274 F.2d 69, plaintiff cattleman sued the United States under the Federal Tort Claims Act. The complaint alleged that employees of the Department of Agriculture tested plaintiff's cattle for Brucel-

losis and told plaintiff that one or more of his cattle were suffering from the disease. This diagnosis was alleged to have been incorrect due to negligence and to have proximately resulted in plaintiff's having to sell his herd at less than the fair market price. The district court dismissed on the basis of the quarantine exception (Section 2680(f)) but the court of appeals affirmed on the basis of the misrepresentation exception (Section 2680(h)). Specifically the court said—

"We must then look beyond the literal meaning of the language to ascertain the real cause of complaint. Plaintiff's real claim is that because of the negligent manner in which these tests were made, the result showed that plaintiff's cattle were diseased; whereas, in fact, they were free from disease and that the Government misrepresented the true condition of these cattle. Plaintiff's loss came about when the Government agents misrepresented the condition of the cattle, telling him they were diseased when, in fact, they were free from disease. The claim is that this misrepresentation caused plaintiff to sell his cattle at a loss. This stated a cause of action predicated on a misrepresentation. Misrepresentation as used in the exclusionary provision of the Statute was meant to include negligent misrepresentation." 274 F.2d at 71.

---

7. Plaintiffs-appellants' contentions in this vein are best summarized by Paragraph VI of their amended complaint:

VI.

Plaintiffs would show the Court that their damages, as complained of herein, was proximately caused by the negligence of the Defendant United States of America acting by and through its agent, Dr. L. E. Moffit as aforesaid in the course and scope of his employment in the following particulars, to-wit:

(a) Defendant was guilty of negligence in prematurely and falsely advising Plaintiff Joseph J. Rey that his premises were infected with hog cholera.

(b) Defendant was guilty of negligence in notifying Plaintiffs of cholera diagnosis.

(c) Defendant was negligent in not notifying Plaintiffs of correct diagnosis established by Iowa laboratories as soon as he received true diagnosis.

(d) Defendant was guilty of negligence in notifying Plaintiffs of a firm diagnosis of "hog cholera" when the results of the laboratory tests were not completed.

(e) Defendant was guilty of negligence in causing the Plaintiffs to treat their hogs for an erroneously diagnosed disease.

That each and every, and all of said acts of negligence, were a proximate cause of the damages and loss sustained and suffered by Plaintiffs, as will be more fully hereinafter set forth.

Any doubt as to the precedential weight to be accorded to *Hall* disappears in the light of the Supreme Court's holding in United States v. Neustadt, supra. The Court there held that the misrepresentation exception barred an action by a person who purchased a home in reliance upon an FHA appraisal which negligently overstated the fair market value. The *Neustadt* court specifically foreclosed any attempt, similar to that of plaintiffs-appellants here, to avoid the bar of Section 2680(h) by alleging negligence in the generation of information which formed the basis of a misrepresentation rather than the actual misrepresentation itself.

"Throughout this line of decisions, the argument has been made by plaintiffs, and consistently rejected by the courts, until this case [below], that the bar of § 2680(h) does not apply when the gist of the claim lies in *negligence* underlying the inaccurate representation, i. e., when the claim is phrased as one 'arising out of' negligence rather than 'misrepresentation.' But this argument, as was forcefully demonstrated by the Tenth Circuit in Hall v. United States, supra, is nothing more than an attempt to circumvent § 2680(h) by denying that it applies to negligent misrepresentation." (emphasis original) 366 U.S. at 703, 81 S.Ct. at 1298, 6 L.Ed.2d at 619.

Following this statement the Supreme Court quoted the same language from *Hall,* that we quote, *supra.*

Inasmuch as the amended complaint charged no more than either negligent misrepresentation or the negligent preparation of information which was thereafter misrepresented to plaintiffs-appellants, the claim sought to be pleaded is barred by Title 28, U.S.C., Section 2680(h). Any claims based upon the plaintiffs' remaining allegations (of the original complaint) dealing with the quarantine, are, as the district court held, barred by Title 28, U.S.C., Sec. 2680(f).

Assuming as true the facts as they emerge from the most favorable reading possible of either or both of appellants' pleadings of them, and as supplemented by Rey's affidavit, we think it is clear that no claim upon which relief may be granted has been stated or can conceivably be proved. In these unusual circumstances, the dismissal below on the pleadings [8] passes muster. Hoshman v. Esso Standard Oil Co., 5 Cir. 1959, 263 F.2d 499, 502, cert. denied, 361 U.S. 818, 80 S.Ct. 60, 4 L.Ed. 64; Feinberg v. Leach, 5 Cir. 1957, 243 F.2d 64, 67; Hilliard v. Brown, 5 Cir. 1948, 170 F.2d 397, 398.

Affirmed.

8. See Note 3, supra, and cases cited.