Cyrus R. WARE, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 79–1031.

United States Court of Appeals, Fifth Circuit.

Oct. 2, 1980.

James R. Warncke, San Antonio, Tex., for plaintiff-appellant.

Leonard Schaitmen, Linda Jan S. Pack, Dept. of Justice, Civ. Div., Washington, D. C., for defendant-appellee.

Before TJOFLAT, POLITZ and HATCH-ETT, Circuit Judges.

HATCHETT, Circuit Judge:

Appellant, Cyrus R. Ware, appeals a district court order dismissing his $331,607.89 claim against the United States. Ware brought his claim under the Federal Tort Claims Act (hereinafter F.T.C.A.), 28 U.S.C. §§ 1346(b), 2674,[1] and under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491,[2] as an

---

1. 28 U.S.C. § 2674 provides, in pertinent part:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 1346(b) provides, in pertinent part:

[T]he district courts, together with the United States District Court for the District of the Canal Zone, and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claim in accordance with the law of the place where the act or omission occurred.

2. 28 U.S.C. § 1491 provides, in pertinent part:

alternate, pendent claim. We find that Ware's F.T.C.A. claim is not barred by the misrepresentation exception in the F.T.C.A. or the statute of limitations. We also find that the district court does not have pendent jurisdiction over Ware's Tucker Act claim. We, therefore, affirm in part and reverse in part.

### FACTS

Ware operates a dairy farm near San Antonio, Texas. On five occasions between December, 1970, and August, 1975, agents of the Department of Agriculture tested Ware's dairy herd for tuberculosis, diagnosed 246 of the cattle as tubercular, and killed them. The government compensated Ware on the basis of the value of diseased cattle. Ware asserts that he later learned that the government misdiagnosed 243 of the 246 cattle, and that only three of the cattle were diseased. The following chart reveals the dates of the government tests and the number of cattle diagnosed as tubercular, and the number killed by the government.

| Date | Number of Cattle Destroyed | Number of Alleged Healthy Cattle Destroyed |
|---|---|---|
| December, 1970 | 34 | 33 |
| November, 1974 | 22 | 21 |
| February, 1974 | 150 | 149 |
| April, 1975 | 27 | 27 |
| August, 1975 | 13 | 13 |
| Total Number | 246 | Total Number 243 |

Upon learning of the misdiagnosis, Ware filed an administrative claim with the Department of Agriculture on or about April 1, 1977. In June of 1977, the Department of Agriculture denied the claim. Five months later, Ware filed the present action, contending that the government was negligent in misdiagnosing his cattle and therefore liable under the F.T.C.A. Ware also asserted an alternative pendent claim under the Tucker Act for the loss of his cattle. Under both acts, Ware sought the actual cash market value of the 243 healthy cattle, plus compensation for lost milk production and damage to his dairy's business. In his complaint, Ware asserted liability under the F.T.C.A. in these words:

> [t]he Defendant's agents when destroying the Plaintiff's aforesaid cattle, represented to Plaintiff that those head of cattle actually destroyed were tubercular upon which representation the Plaintiff relied and the action of Defendant's agents in

The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States. To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any adminis-

trative or executive body or official with such direction as it may deem proper and just. 28 U.S.C. § 1346(a)(2) provides, in pertinent part, that:

(a) The district courts shall have *original jurisdiction, concurrent with the Court of Claims,* of:

. . . . .

(2) Any other civil action or claim against the United States, *not exceeding $10,000* in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .
For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States. [Emphasis added.]

destroying the cattle, Plaintiff acquiesced, relying on the representation that the cattle were all indeed diseased.

The basis of the Tucker Act claim is not clearly articulated, but appears to be a Fifth Amendment allegation of taking of property without just compensation.

The government moved to dismiss the complaint. The government claimed that Ware's F.T.C.A. complaint was barred by the "misrepresentation exception" to the F.T.C.A. If the F.T.C.A. claim was not barred entirely by the misrepresentation exception, the claim for 203 of the 243 cattle was barred under 28 U.S.C. §§ 2401(b), 2675(a),[3] because Ware failed to file an administrative claim within two years of the accrual of the claim. The government further alleged that the district court lacked jurisdiction over Ware's pendent Tucker Act claim since the amount in controversy exceeded $10,000, the statutory limit of the district court in an original Tucker Act case.

Initially, the district court granted the government's motion as to the Tucker Act claim, holding that exclusive jurisdiction lay in the Court of Claims. The district court, however, concluded that neither the misrepresentation exception nor the statute of limitations barred Ware's F.T.C.A. claim. Both parties moved the court to reconsider its ruling and, on reconsideration, the district court, for jurisdictional reasons not fully explained, dismissed Ware's entire case. This appeal results.

## ISSUES

This court must decide:

1. whether the misrepresentation exception to the F.T.C.A. bars Ware's tort claim;

2. whether Ware's failure to file an administrative claim within two years of the date the government told him the cattle were tubercular bars his claim for 203 of the 243 cattle; and,

3. whether the district court has jurisdiction over Ware's Tucker Act claim.

## I

The government argues that Ware's tort claim is barred by 28 U.S.C. § 2680(h), the misrepresentation exception to the F.T.C.A. Section 2680(h) provides, in pertinent part, that:

[t]he provisions in this chapter and section 1346(b) of this title shall not apply to—

.   .   .   .   .

(h) Any claim arising out of   .   .   . *misrepresentation* deceit, or interference with contract rights.   .   .   .   [Emphasis added.]

The government relies on *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), for the proposition that the misrepresentation exception bars claims arising out of negligent misrepresentation. In *Neustadt*, a couple purchased a home that they would not have purchased had they not relied on a negligent inspection and appraisal of the home made for mortgage and insurance purposes by the Federal

**3.** 28 U.S.C. § 2675(a) provides that:

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed

a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

28 U.S.C. § 2401(b) provides that:

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Housing Administration. The government maintains that Ware's complaint reveals that the basis of his action is the tort of negligent misrepresentation, for which, under *Rey v. United States*, 484 F.2d 45 (5th Cir. 1973), there is no recovery.

In *Rey*, the plaintiffs filed an amended complaint against the United States under the F.T.C.A., alleging that a Department of Agriculture veterinarian negligently tested or diagnosed their hogs. This government employee erroneously and negligently notified the plaintiffs that the hogs were infected with hog cholera, and plaintiffs then administered a vaccine which killed the hogs. In affirming the district court's dismissal of the amended complaint, this court held that the misrepresentation exception to the F.T.C.A. barred recovery because:

> Whatever the additional allegations of negligence in the defendant United States' operations, the negligently erroneous transmission of misinformation is the crucial element in the chain of causation from defendant's negligence to plaintiffs' damages. It is the key fact to be established, the *sine qua non*, of the theory of the amended complaint. . . . Misrepresentation, although asserted in terms of negligence, is the tortious act now relied on for recovery.

484 F.2d at 49.

The government also relies on a Tenth Circuit case cited in *Rey, Hall v. United States*, 274 F.2d 69 (10th Cir. 1959), where a cattleman sued the government under the F.T.C.A. for the alleged negligent testing of his cattle for brucellosis. There, government agents told the cattleman that one or more of his cattle were infected, and he subsequently suffered a loss by selling the cattle at a price less than the full market value for healthy cattle. The *Hall* court affirmed the dismissal of the complaint on the basis of the misrepresentation exception, focusing on the essence of the claim, rather than the language of the complaint. The court reasoned that:

> Plaintiff's loss came about when the government agents misrepresented the condition of the cattle, telling him they were diseased when, in fact, they were free from disease. The claim is that this misrepresentation caused plaintiff to sell his cattle at a loss. This stated a cause of action predicated on a misrepresentation. Misrepresentation as used in the exclusionary provision of the statute was meant to include negligent misrepresentation.

274 F.2d at 71.

While we agree that the United States is not liable under the F.T.C.A. for a claim for negligent misrepresentation, we do not agree with the government that this is a misrepresentation case. We base our holding on the fact that the tort of negligent misrepresentation demands some act, the result of justifiably relying on the misrepresentation. Following *Neustadt*, we must construe negligent misrepresentation according to "the traditional and commonly understood legal definition of the tort." 366 U.S. at 706, 81 S.Ct. at 1300. Referring, as did the Supreme Court in *Neustadt*, to the American Law Institute's definition of negligent misrepresentation, we find some act or *transaction* necessary to complete the tort.

RESTATEMENT (SECOND) OF TORTS, § 552. Information Negligently Supplied for the Guidance of Others.

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competency in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to the loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a *trans-action* that he intends the information to influence or knows that the recipient so intends or in a substantially similar *transaction.*

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the *transactions* in which it is intended to protect them. [Emphasis added.]

The basis of Ware's tort claim is that the government negligently diagnosed his cattle as being tubercular and then destroyed them, to his damage. The government, not Ware, destroyed the cattle and caused the damage. Ware suffered damage, not through any action he took based on any misrepresentation by the government, but by the government's destruction of his cattle. The government destroyed the cattle because of the alleged negligent misdiagnosis. The cases relied on by the government, *Neustadt, Rey,* and *Hall,* involve situations where a plaintiff brought suit based upon a misrepresentation upon which he acted to his detriment. In *Neustadt,* plaintiffs bought a house because of a negligent misrepresentation; in *Rey,* plaintiffs, relying on the negligent misrepresentation of a government veterinarian, injected their hogs with live vaccine and killed them; and in *Hall,* the plaintiff sold his cattle at a loss, based on the government's negligent misrepresentation that his cattle were diseased. Here, Ware committed no act. All actions were taken by the government's agents; it was they who allegedly negligently misdiagnosed the condition of Ware's cattle; and it was they who destroyed the cattle, to Ware's damage.

■ The government's misrepresentation caused Ware to do nothing save remain in ignorance that he had suffered a compensable loss. The government, not Ware, destroyed the cattle and caused the damage. Ware's complaint, thus, arose out of, not a negligent misrepresentation, but an allegedly negligent misdiagnosis that caused the government to destroy his cattle. Under

these facts, we are unable to apply the misrepresentation exception to bar Ware's F.T.C.A. claim.

## II

Because we rule that the misrepresentation exception is inapplicable, we turn to the government's statute of limitations argument. The government declares that dismissal is in order as to each alleged act or omission of negligence which occurred prior to April 1, 1975, as barred by the operation of 28 U.S.C. §§ 2401(b), and 2675(a), because no administrative claim was presented to the Department of Agriculture within two years of the destruction of the cattle.

Under § 2675(a), before a F.T.C.A. action may be filed against the United States, an administrative claim must be presented to the appropriate federal agency, and that agency must either deny the claim in writing or fail to take final action on it for six months. Section 2401(b) requires that if an administrative claim is not presented to the appropriate federal agency within two years of the alleged incident, the claim against the United States arising out of the incident is forever barred.

The government contends that the running of the two year statute of limitations with respect to each of the three incidents of alleged negligence occurring prior to April of 1975 commenced upon the dates of the alleged representations leading up to the destruction of the cattle: December of 1970; November of 1974; and February of 1975. Under the government's view, recovery for losses due to government negligence occurring on these dates is barred by the two year limitation. The government believes that Ware states a claim for relief only as to those two claims concerning the diagnosis of tuberculosis in twenty-seven head of cattle tested in April, 1975, and thirteen head of cattle tested in August, 1975.

■ Although state law determines whether any claim accrues against the government on the negligence issue, *Marcum v. United States,* 621 F.2d 142 (5th Cir.

1980); *Ferrero v. United States,* 603 F.2d 510 (5th Cir. 1979), federal law determines when a claim accrues within the meaning of § 2401(b) of the F.T.C.A. *Mendiola v. United States,* 401 F.2d 695 (5th Cir. 1968); *Beech v. United States,* 345 F.2d 872 (5th Cir. 1965).

The government urges us to apply the *Mendiola* standard, which provides that a claim accrues under the F.T.C.A. "as a matter of federal law, where the injury coincides with the negligent act and some damage is discernible at the time." 401 F.2d at 697. In *Mendiola,* this court affirmed a dismissal where the plaintiff suffered personal injuries and did not file a F.T.C.A. claim until after determination of his workmen's compensation suit, which was not finalized until more than two years after his injuries were sustained.

We find the *Mendiola* standard applicable to this set of circumstances, but our interpretation of *Mendiola* achieves a result contra to the result urged by the government. We find that the *Mendiola* standard does not cause Ware's action to be barred by the two year statute of limitations. As previously stated, under *Mendiola,* accrual arises "where the injury coincides with the negli-

gent act and some damage is discernible at the time."[4]

■ Applying the *Mendiola* standard to the facts at hand we find that injury, negligent act, and discernible damage fail to coincide. In this instance, the injury was the killing of the healthy cattle. The negligent act was the misdiagnosis. But until Ware learned of the destruction of the healthy cattle, no damage was discernible to him, since he labored under the mistaken belief that his cattle, being tubercular, merited death. There was nothing to cause Ware to recognize that he had suffered any damage, until he later found that the government had misdiagnosed the condition of his cattle. Prior to knowledge of the misdiagnosis, Ware knew only that the government tested his cattle, found them to be diseased, and destroyed them in accordance with law. Ware had no reason to suspect that the government was mistaken in its diagnosis. Consequently, while Ware knew that he had suffered a loss, he did not know that his loss was compensable. Since the government misled Ware into believing that the cattle were killed out of necessity, Ware did not know he had suffered damage. Under *Mendiola,* accrual cannot commence until "some damage is discernible at

**4.** As the government admits, *Mendiola* is not a medical malpractice case. It is for that very reason that we choose to apply the *Mendiola* accrual test. By applying the accrual test there stated, we avoid the interpretative problems that could occur if we apply to these facts the medical malpractice accrual test articulated in *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) and by this court in *Waits v. United States,* 611 F.2d 550 (5th Cir. 1980); *Beech v. United States,* 345 F.2d 872 (5th Cir. 1965); and *Quinton v. United States,* 304 F.2d 234 (5th Cir. 1962). The Supreme Court in *Kubrick* stated the general concept of the medical malpractice accrual test "to be that the two-year period did not begin to run until the plaintiff has discovered both his injury and its cause." 444 U.S. at 120, 100 S.Ct. at 358, 62 L.Ed.2d at 268. In more specific fashion, upheld by the *Kubrick* Court, this circuit defines accrual to be the time when "the claimant discovered, or in the exercise of reasonable diligence should have discovered, the existence of the acts of malpractice upon which his claim is based." *Quinton,* 304 F.2d at 235. As mentioned, confusion could result if we apply the *Quinton* test to these facts. Courts created the

medical malpractice test to protect those who suffered damage arising out of both a specialized area, medicine, and a unique relationship, doctor-patient. See *Toal v. United States,* 438 F.2d 222 (2nd Cir. 1971); RESTATEMENT (SECOND) OF TORTS § 899, Comment e. While we feel it important to apply the non-medical malpractice test of *Mendiola,* we are very aware that the *Mendiola* accrual test contains the discovery element found in the medical malpractice test. The *Mendiola* test allows divergence from "the general rule under the Act . . . that a tort claim accrues at the time of the plaintiff's injury." 444 U.S. at 120, 100 S.Ct. at 358, 62 L.Ed.2d at 268. The *Mendiola* test is the result of the line of cases, *Beech v. United States,* 345 F.2d 872 (5th Cir. 1965); *United States v. Reid,* 251 F.2d 691 (5th Cir. 1958), that flowed from the "blameless ignorance" principle in *Urie v. Thompson,* 337 U.S. 163 at 170, 69 S.Ct. 1018 at 1024, 93 L.Ed. 1282 (1949). In our view, *Mendiola,* by relying on the non-medical malpractice negligence test of *Beech,* created a special accrual test for negligence actions under the F.T.C.A., similar to, but distinct from, the medical malpractice accrual test.

the time." Therefore, accrual commenced at the time Ware learned that he had suffered damage.

Ware also met the statutory requirement of filing an administrative claim with the appropriate federal agency. Ware filed his administrative claim with the Department of Agriculture in April, 1977. He filed this claim because, shortly before April, 1977, a government veterinarian told him that a recently developed testing procedure could more accurately determine if cattle were tubercular. This admission made Ware suspicious. Subsequently, after inquiry, he determined that all but three of his cattle destroyed by the government were healthy.

Accordingly, the statute of limitations did not run in this case until Ware obtained knowledge of the negligent misdiagnosis by the government. Only at that point could Ware discern that he had suffered damage.

### III

Ware originally brought this action in two counts. Count I consisted of his F.T.C.A. claim. In Count II of his complaint, Ware requested that "in the alternate, if he is not entitled to his relief prayed for under the Federal Tort Claims Act, that he is, nevertheless, entitled to relief under the Tucker Act." The relief sought under both the F.T.C.A. and the Tucker Act is identical. Under both claims, Ware sought the actual cash market value of the 243 healthy cattle, plus compensation for lost milk production and damage to the dairy's business. Ware's Tucker Act claim is, therefore, a truly alternate claim, not an additional claim. Since we hold that Ware's F.T.C.A. claim is not barred, and since Ware's Tucker Act claim is an alternate claim seeking identical relief, we only discuss Ware's pendent jurisdiction argument to provide the district court with clear instructions on remand. We also note that Ware's argument is novel to this circuit.[5]

Ware contends that the district court erred in failing to exercise pendent jurisdiction over his Tucker Act claim.[6] Ware admits that the district court lacked original jurisdiction to hear the Tucker Act claim, but he maintains that the district court should have exercised pendent jurisdiction. He relies on the Supreme Court's holding in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

5. In *Roman v. Velarde*, 428 F.2d 129 (1st Cir. 1970), the First Circuit entertained, under different circumstances, the question of whether a Tucker Act claim may be appended to a F.T.C.A. claim. The claim involved an inverse condemnation action, and the court determined that subject matter jurisdiction lay with the Court of Claims. The court determined that the F.T.C.A. does not provide a supplementary forum for those demanding compensation for land permanently taken. The court also stated that "we think that it is relevant, in determining Congressional intent with regard to the allocation of jurisdiction [under the Tucker Act and the F.T.C.A.], whether a claim [is] an established tort under general law. Local lawmakers do not have unlimited power to bring Tucker Act claims under the F.T.C.A. by declaring them to be 'torts.'" 428 F.2d 132, 133, n. 5.

In *Sanborn v. United States*, 453 F.Supp. 651 (E.D.Calif.1977), property owners brought suit against the federal government and California, alleging inverse condemnation, trespass, and negligence. The district court held that an inverse condemnation taking claim in excess of $10,000 could not be appended to F.T.C.A. claims. The court stated that a Tucker Act claim may not be appended to a F.T.C.A. claim to avoid the well established requirement of a waiver of sovereign immunity.

Both *Roman v. Velarde* and *Sanborn* are distinguishable, in that, in addition to other factors, the claims sought to be appended were additional claims, not alternate claims seeking identical relief.

6. Ware has no contractual relationship with the government, and therefore, apparently intended to present a Tucker Act taking claim, although he makes no reference to the Fifth Amendment. The Supreme Court has held that the Tucker Act provides a remedy for claimants alleging that governmental conduct has resulted in a taking of property in violation of the Fifth Amendment. *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); *Hurley v. Kincaid*, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637 (1932). As noted by the government, however, it is by no means clear that Ware has such a claim. The Tucker Act permits suits only "in cases not sounding in tort." 28 U.S.C. §§ 1346(a)(2), 1491. Ware has an action sounding in tort under the F.T.C.A. In his Tucker Act claim, Ware alleges no additional or peculiar facts to present a claim "not sounding in tort."

In *Gibbs*, the Supreme Court held that where a federal court is presented with both a federal and non-federal claim derived from the same "common nucleus" of operative fact, and the federal court has jurisdiction over the federal claim, then the federal court has pendent jurisdiction to try the non-federal claim. 383 U.S. at 725, 86 S.Ct. at 1138. More recent Supreme Court decisions expand the doctrine of pendent jurisdiction by holding that the exercise of pendent jurisdiction is especially appropriate when the pendent claim arises under federal law, rather than state law. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

Ware argues that his $331,607.89 Tucker Act claim, like any other claim arising under federal law, may be heard by the district court under pendent jurisdiction. Sovereign immunity is not a bar, Ware says, because Congress waived immunity to claims such as his in the Tucker Act. Ware asserts that the $10,000 district court jurisdictional limitation in the Tucker Act merely controls the district court's original jurisdiction over a Tucker Act claim. Under Ware's view, the $10,000 limitation does not detract from the government's consent to be sued and does not prohibit district court adjudication, under the doctrine of pendent jurisdiction, of Tucker Act claims exceeding $10,000.

█ We disagree. The United States, as sovereign, is immune from suit except as it waives its immunity, and the terms of its waiver, as set forth expressly and specifically by Congress, define the parameters of a federal court's subject matter jurisdiction to entertain suits brought against it. *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Honda v. Clark*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1952); *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The conditions that Congress imposes upon its waiver of immunity should be strictly construed. *Sherwood*; *see Dalehite.*

█ The Tucker Act, like the F.T.C.A., waives the immunity of the United States, but that immunity is waived only to the extent specifically set forth by Congress. Assuming that Ware presents a valid Fifth Amendment taking claim, the only express waiver of sovereign immunity which vests the district court with jurisdiction over taking claims against the United States is set forth at 28 U.S.C. § 1346(a)(2), and it limits the district court jurisdiction to claims involving $10,000 in damages or less. Jurisdictional amounts, like statutes of limitation, are conditions of the waiver, and it is not for us to extend the conditions that Congress has set. *See United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). As the *Dalehite* court stated, specifically referring to the conditions (exceptions) to the F.T.C.A. waiver of immunity:

This statute is another example of the progressive relaxation by legislative enactments of the rigor of the immunity rule. Through such statutes that change the law, organized government expresses the social purposes that motivate its legislation. Of course, these modifications are entitled to a construction that will accomplish their aim, that is, one that will carry out the legislative purpose of allowing suits against the government for negligence with due regard for the statutory exceptions to that policy. In interpreting the exceptions to the generality of the grant, courts include only those circumstances which are within the words and reason of the exception. They cannot do less since petitioners obtain their "right to sue from Congress [and they] necessarily must take [it] subject to such restrictions [conditions] as have been imposed."

So, our decisions have interpreted the Act to require clear relinquishment of sovereign immunity to give jurisdiction for tort actions.

346 U.S. at 30–31, 73 S.Ct. at 965, (footnotes and citation omitted).

The law of this circuit is clear: the Court of Claims has exclusive jurisdiction of a Tucker Act claim in excess of $10,000. *Blanchard v. St. Paul Fire and Marine Insurance Co.*, 341 F.2d 351 (5th Cir.), *cert. denied*, 382 U.S. 829, 86 S.Ct. 66, 15 L.Ed.2d 73 (1965). Federal district courts are granted concurrent jurisdiction with the Court of Claims only over suits for $10,000 or less. 28 U.S.C. § 1346(a)(2); *Gardner v. Harris*, 391 F.2d 885 (5th Cir. 1968); *Blanchard.*

Ware cites no authority for the proposition that the United States expressly consents to be sued on a Tucker Act claim in a district court where such claim seeks more than $10,000 in damages. Adopting the language of *Sanborn v. United States*, 453 F.Supp. 651, 655 (E.D.Cal.1977) (refer to n. 5), "[t]his court cannot, by using the judge-made doctrine of pendent jurisdiction waive the immunity of the United States where Congress, constitutional guardian of this immunity, has declined to do so."

■ Since neither statute nor precedent allow a district court to hear a Tucker Act claim in excess of $10,000, and since the government has not specifically consented to such a claim, the district court is powerless to entertain the claim.

## CONCLUSION

For the preceding reasons, we hold that the misrepresentation exception to the F.T.C.A. does not bar Ware's tort claim; that the statute of limitations did not commence to run until Ware had knowledge of the damage he suffered; and that the district court does not have pendent jurisdiction over Ware's Tucker Act claim. Accordingly, we affirm the district court's dismissal of the Tucker Act claim and reverse the dismissal of the F.T.C.A. claim, remanding to the district court for proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.