**COMMERCIAL UNION INSURANCE COMPANY, et al., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 89–3873.

United States Court of Appeals, Fifth Circuit.

April 11, 1991.

ject matter jurisdiction pursuant to the discretionary function and misrepresentation exceptions of the Federal Tort Claims Act, 28 U.S.C. §§ 2680(a) & (h). We affirm.

## Facts and Proceedings Below

The insurers underwrote liability coverage for the executive officers of Avondale Shipyards, Inc., (Avondale), who in turn were defendants in a number of Louisiana law actions by workers who allegedly contracted silicosis as a result of exposure to silica dust during sandblasting at the shipyard. Eventually the insurers negotiated a compromise settlement with the workers. The insurers then asserted administrative claims for indemnity or contribution against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, and filed the present action seeking the same relief in the United States District Court for the Eastern District of Louisiana on August 20, 1987.

The insurers allege that Avondale supplied its workers with supplied-air respirators that had been submitted by the manufacturers of that equipment to the United States Bureau of Mines (the bureau) between 1936 and 1937 for testing and approval pursuant to the bureau's statutory mission to

> "prepare and publish ... reports of inquiries and investigations, with appropriate recommendations of the bureau, concerning ... the improvement of conditions, methods, and equipment, with special reference to health [and] safety ... in the mining, quarrying, metallurgical, and other mineral industries." Act of February 25, 1913, ch. 72, § 3, 37 Stat. 681 (currently codified at 30 U.S.C. § 5).

Information pertaining to these tests was published in Bureau of Mines, U.S. Dep't of the Interior, *Procedure for Testing Supplied–Air Respirators for Permissibility* (1937). The insurers allege that the bureau approved all the respirators used by the silicosis claimants in the Avondale shipyard, but that in fact the respirators were defectively designed and thus inadequate to protect workers using them from being exposed to dangerous levels of silica dust.

Samuel M. Rosamond, III, Thomas Loehn, Boggs, Loehn & Rodrique, New Orleans, La., for Commercial Union Ins.

Gary A. Lee, Eric J. Schincler, Faris, Ellis, Cutrone & Gilmore, New Orleans, La., for Underwriters.

Phyllis Jackson Pyles, Asst. Dir., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., John Volz, U.S. Atty., New Orleans, La., for U.S.

Before CLARK, Chief Judge, GARWOOD and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

Commercial Union Insurance Company *et al.* (collectively, "insurers") appeal the dismissal of their claim against the United States for the Bureau of Mines' allegedly improper approval of supplied-air respiratory equipment in the 1930s. The district court dismissed the claim for lack of sub-

The insurers claim that the bureau's failure to discover this risk was negligent, and proximately caused the injuries of the silicosis claimants.

On May 3, 1988, the United States moved to dismiss the action for lack of subject matter jurisdiction on the theory that it was barred by the discretionary function and misrepresentation exceptions to the FTCA, 28 U.S.C. §§ 2680(a) & (h) respectively.[1] The court denied the motion on August 19, 1989, but ordered the insurers to file a written statement detailing the duty that was allegedly breached by the bureau's activities. Instead, the insurers filed a second amended complaint on September 23, 1988. On May 22, 1989, the government renewed its motion to dismiss on the basis of the misrepresentation and discretionary function exceptions to the FTCA. On November 17, 1989, the district court granted the motion and dismissed the action on both grounds.

## Discussion

As a general rule, the FTCA waives the sovereign immunity of the United States from tort liability for negligent or wrongful acts or omissions of its agents acting within the scope of their employment. *See* 28 U.S.C. § 2674. The district courts have exclusive jurisdiction over these claims. *See id.* § 1346(b). The district courts are divested of jurisdiction, however, to hear certain types of claims falling within this general class. *See id.* § 2680. In particular, section 2680(h) divests them of jurisdiction to hear claims arising out of several traditional torts, including misrepresentation.

The framework for applying the misrepresentation exception in negligence actions is drawn by the Supreme Court's decisions in *United States v. Neustadt*, 366 U.S. 696,

81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961) and *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). In *Neustadt*, the Court held that the misrepresentation exception barred the claim of one who, in purchasing his home with mortgage financing insured by the Federal Housing Administration (FHA), relied upon an allegedly negligent FHA appraisal. The Court determined that the plaintiff's allegations simply stated a claim for negligent misrepresentation[2] and that there was nothing to indicate the government had offered its appraisal as a warranty of value or otherwise intended to give the plaintiffs an actionable right of redress against the government. *Neustadt*, 81 S.Ct. at 1302–03.

In *Block*, the plaintiff was furnished a loan by the Farmers Home Administration (FmHA) to construct her residence pursuant to an arrangement calling for the contractor's work to conform to FmHA–approved plans and to be periodically inspected and approved by the FmHA, and the FmHA did inspect and approve the construction. The Court held that the misrepresentation exception did *not* bar the plaintiff's claim for damages for the failure of the FmHA to detect defects in her home during its construction, because the Court found that the government's active involvement in the construction process constituted the assumption of a supervisory role in that construction. While the government had no duty to assume such a role, once it did so, applicable state law obligated it to carry the role out in a nonnegligent manner. Had the FmHA not negligently failed to point out defects while construction was still underway, the contractor "would never have turned the house over to [plaintiff] Neal in its defective condition." *Id.* 103 S.Ct. at 1094. Thus, the Court decided that

---

1. Section 2680 of title 28 provides in pertinent part:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

"....

"(h) Any claim arising out of ... misrepresentation...."

2. Traditionally, a breach of "the duty to use due care in obtaining and communicating information upon which [a] party may reasonably be expected to rely in the conduct of his economic affairs...." 81 S.Ct. at 1300.

while there might also be claims for negligent misrepresentation on the *Block* facts, those allegations were not necessary to the state negligence cause of action. The misrepresentation exception, therefore, would not bar the claim. *See id.* at 1092–94. *Block* describes *Neustadt* as a case where the plaintiff "alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal." *Block*, 103 S.Ct. at 1093. *Block* did not purport to overrule or question the soundness of *Neustadt*.

This Court has also had occasion to discuss the application of section 2680(h) to claims of negligent misrepresentation. In *Rey v. United States*, 484 F.2d 45 (5th Cir.1973), we affirmed the dismissal of an action by a hog farmer for damages incurred when he relied on erroneous representations by an agent of the Department of Agriculture that his livestock was infected with a cholera virus, because we found that the "negligently erroneous transmission of misinformation [was] the crucial element in the chain of causation from defendant's negligence to plaintiffs' damages." *Id.* at 49. In *Baroni v. United States*, 662 F.2d 287 (5th Cir.1981), *cert. denied*, 460 U.S. 1036, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983), we affirmed the dismissal of claims by homeowners suing the government for incorrectly determining the extent of the flood plain in their neighborhoods when approving FHA funding for their developer. Following *Neustadt*, we held that the National Housing Act did not create an independent federal right of redress for the error, and any state law negligence action was barred because the plaintiffs' damages still turned solely on the government's communication of misinformation. *See id.* at 289. Similarly, in *City of Garland v. Zurn Indus., Inc.*, 870 F.2d 320, 325 (5th Cir.1989), we held that the misrepresentation exception barred any state law negligence claim by Garland and its wastewater contractor against the EPA, because the claim was premised on their reliance on inaccurate test data made available by the EPA. Because *City of Garland* also held that the Clean Water Act imposed no independent federal duty on

EPA to warrant the accuracy of information it disseminated, the city's claim was dismissed as barred by the misrepresentation exception of section 2680(h). *See id.* at 325–36.

■ These cases suggest a two-step process for determining whether a particular negligence claim is barred by the misrepresentation exception to the FTCA. First, the court must determine whether the chain of causation from the alleged negligence to the alleged injury depends upon the transmission of misinformation by a government agent. If not, *Block* holds that the misrepresentation exception does not prevent a waiver of sovereign immunity from the state negligence claim. If, on the other hand, the causal chain does depend on the transmission of misinformation, then the exception applies and there is no waiver of immunity under the Act. In that case, the court must determine whether Congress has nonetheless waived sovereign immunity independently of the FTCA, by creating a specific action against the government for the damages claimed.

■ Accordingly, the first issue here is whether the transmission of misinformation is a necessary link in the causal chain from the negligence on the part of the bureau that the insurers allege to the injuries they claim to have suffered as a result of Avondale's use of defective supplied-air respirators. We hold that it is.

Unlike the situation in *Block*, neither the insurers nor Avondale had any sort of direct or special relation with the bureau. The equipment was submitted for testing by its manufacturer, not by Avondale (or its officers). With respect to bureau approval of the equipment and information concerning such action, Avondale and the insurers stood in no different relationship to the bureau than any other member of the general public who might use or rely on such approval or information. The gravamen of the insurer's claim is that the bureau, by negligently designing and conducting its tests, incorrectly determined that the supplied-air respirators in question were safe, and then disseminated this erro-

**180**

neous information to the public at large by publishing its results. The insurers do not claim that manufacturers were legally required to submit their equipment for testing or that bureau approval was a prerequisite to the legal sale or use of supplied-air respirators. They concede that the sale of unapproved respirators was legal. Thus, only by claiming that Avondale relied on the bureau's publicly disseminated approval when it decided to use the respirators in question can the insurers establish a proximate causal connection between the alleged negligence in the testing process and the alleged injury.[3] Negligent misrepresentation, therefore, is an essential part of the insurers' claim, and the district court correctly concluded that it lacked jurisdiction under the FTCA to hear this case.

■ The only remaining issue is whether the statutory mandate instructing the Bureau of Mines to investigate and disseminate information on mine safety operates as an independent waiver of sovereign immunity by creating an independent federal cause of action for damages caused by negligent testing and disclosure on the bureau's part. We conclude that it does not.

■ Waivers of sovereign immunity must be unequivocally expressed. *E.g., Interfirst Bank Dallas, N.A. v. United States,* 769 F.2d 299, 306 n. 10 (5th Cir. 1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986). They must be specific and explicit and cannot be implied by construction of an ambiguous statute. *E.g., I'etterway v. VA Hospital, Houston,*

*Texas,* 495 F.2d 1223, 1225 n. 3 (5th Cir. 1974). No such waiver is present here. Nothing in the statutory language, cited above, suggests that the government intended to warrant the accuracy of the information disseminated. To the contrary, it suggests that Congress intended nothing more than to empower the bureau to act as an investigative body and clearinghouse of data regarding mine safety and health. We accordingly conclude that Congress has created no independent federal cause of action against the United States for negligent misrepresentation in connection with the statutory mission of the Bureau of Mines to collect and disseminate safety information.

### Conclusion

For the foregoing reasons, the district court's dismissal of this action for lack of subject matter jurisdiction was proper.[4] The decision below is accordingly

AFFIRMED.

3. Although the issue is not presented on the facts before us, we observe that if supplied-air respirators could not lawfully have been sold or used unless the manufacturer first obtained bureau approval, then the general communication of bureau approval by the government arguably might not have been an essential element of an action for negligence under *Block.* If reasonable care by the bureau in the testing process would have prevented approval of the equipment, the allegedly defective equipment arguably never would have been available for Avondale to purchase or use. In that case, the bureau's negligence might arguably be a proximate cause of the alleged damage, without reference to a communication of misinformation. Under those circumstances, Louisiana law and the FTCA might then have imposed a duty of rea-

sonable care on the Bureau of Mines. *See, e.g., Harris v. Pizza Hut of Louisiana, Inc.,* 455 So.2d 1364, 1369 (La.1984) (no general duty to protect others from harm, but where such duty is voluntarily assumed it must be carried out with reasonable care). *Cf. Block,* 103 S.Ct. at 1092–94. We do not decide, however, whether under such a state of facts FTCA recovery would be barred by either clause (h) or clause (a) of section 2680.

4. Because our disposition on this issue is sufficient to sustain the dismissal, we need not decide whether the discretionary function exception of section 2680(a) independently justified the action of the district court.