# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50201
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 19, 2017

Lyle W. Cayce
Clerk

MICHAEL SAMMONS,

Plaintiff–Appellant,

versus

UNITED STATES OF AMERICA,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, SMITH, and GRAVES, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Michael Sammons, proceeding *pro se*, brought a takings claim against the United States. The district court concluded that, under the Tucker Act, Sammons must pursue his claim in the Court of Federal Claims ("CFC"), so it dismissed for want of subject-matter jurisdiction. Sammons contends that the Tucker Act is unconstitutional because it requires him to litigate his claim in

No. 17-50201

an Article I court. We affirm.

## I.

Congress created the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") to provide, among other things, liquidity to the residential mortgage market. During the financial crisis of 2008, the two entities faced a sharp reduction in the value of their assets and a loss of investor confidence. In response, Congress passed the Housing and Economic Recovery Act of 2008, which created the Federal Housing Finance Agency ("FHFA") and empowered it to act as conservator of Fannie Mae and Freddie Mac. Shortly after the FHFA placed the enterprises into conservatorship, the Treasury Department purchased $1 billion of preferred stock in each entity. That "Senior Preferred Stock" enjoyed preference as to all other preferred stock and was entitled to an annual cumulative dividend equal to ten percent of the money given to the enterprises from the Treasury. In 2012, the FHFA and the Treasury amended the stock-purchase agreement to change the dividend to one hundred percent of the current and future profits of the enterprises.

Sammons holds $1 million in noncumulative preferred shares in Fannie Mae and Freddie Mac, and he contends that the 2012 amendment permanently deprived him of the economic value of his preferred shares. He thus asserts that the amendment amounted to a regulatory taking and that he is entitled to $900,000 in just compensation.

The government moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because the Tucker Act vests exclusive jurisdiction for takings claims over $10,000 in the CFC. 28 U.S.C. § 1491(a)(1). Sammons moved for a declaratory judgment that the Tucker Act is unconstitutional as applied to his claim. The court rejected Sammons's

No. 17-50201

constitutional challenge and dismissed for lack of jurisdiction. We review *de novo* a Rule 12(b)(1) dismissal for lack of jurisdiction.[1]

## II.

The Tucker Act provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). It does not "create substantive rights, but [is] simply [a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law".[2]

Under the Tucker Act, the CFC has exclusive jurisdiction over claims against the United States for more than $10,000.[3] Sammons concedes that, because he seeks more than that, the district court had no statutory jurisdiction. He attempts to get around that by attacking the Tucker Act, theorizing that it violates Article III by vesting the power to hear constitutional takings claims in the CFC, an Article I court.

There are several classes of cases that Congress can permissibly assign to non-Article III courts.[4] One includes cases involving "public rights, which

---

[1] *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 599 (5th Cir. 2016).

[2] *United States v. Bormes*, 133 S. Ct. 12, 17 (2012) (quotation marks omitted and alteration adopted).

[3] *Chichakli v. Szubin*, 546 F.3d 315, 317 (5th Cir. 2008); 28 U.S.C. § 1491(a)(1). If the claim is for $10,000 or less, the Little Tucker Act vests the CFC and district courts with concurrent jurisdiction. *Bd. of Governors of Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 999 n.18 (5th Cir. 1994); 28 U.S.C. § 1346(a)(2).

[4] *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 64–70 (1982) (plurality opinion) (describing the categories of cases).

3

may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper."[5]  One way a right can be "public" is if it is asserted against the United States in its sovereign capacity, such that the government has immunity.[6]  In such circumstances, "Congress may set the terms of adjudicating a suit when the suit could not otherwise proceed at all."  *Stern*, 564 U.S. at 489.

The dispute thus reduces to whether the United States, in the absence of the Tucker Act, has sovereign immunity over takings claims.  If it does, then Congress can attach conditions to its Tucker-Act waiver, such as requiring claimants to litigate in the CFC.  The government maintains that before Congress passed the Tucker Act in 1887, it had not waived sovereign immunity over takings claims.  The government observes that, before then, citizens had to request individual waivers of sovereign immunity through private bills in Congress.[7]  Sammons counters that the Fifth Amendment automatically waives sovereign immunity.  He principally relies on Supreme Court precedent describing the "self-executing" nature of the takings clause.[8]

But whatever the merits of the parties' positions, the issue is foreclosed.

---

[5] *Stern v. Marshall*, 564 U.S. 462, 489–90 (2011) (quoting *Murray's Lessee v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 284 (1855)).

[6] *Id.* at 489; *N. Pipeline*, 458 U.S. at 67 (plurality opinion); *Ex parte Bakelite Corp.*, 279 U.S. 438, 452 (1929).

[7] *See Library of Cong. v. Shaw*, 478 U.S. 310 n.3 (1986); *Langford v. United States*, 101 U.S. 341, 343 (1879) ("It is to be regretted that Congress has made no provision by any general law for ascertaining and paying . . . just compensation.").

[8] *See, e.g.*, *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty.*, 482 U.S. 304, 314–16 (1987) ("We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of the self-executing character of the constitutional provision with respect to compensation . . . ") (quotation marks omitted).

"It is well-established in this circuit that one panel of this Court may not over-rule another." *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014). Moreover, "[t]he binding force of a prior-panel decision applies not only to the result but also to those portions of the opinion necessary to that result." *Id.* (quotation marks omitted and alteration adopted).

We have decided, in a way that was necessary to the holding, that the Fifth Amendment does not automatically waive sovereign immunity. In *Ware v. United States*, 626 F.2d 1278, 1279–80 (5th Cir. 1980), the plaintiff brought a claim against the United States in district court under the Federal Tort Claims Act and asserted a pendent claim under the Tucker Act. We characterized the Tucker Act claim as a takings claim under the Fifth Amendment. The plaintiff sought $331,607.89 but contended that the Tucker Act's $10,000 limitation on district-court jurisdiction applied only to original jurisdiction and not to pendent claims. *Id.* at 1286.

We rejected the plaintiff's position, explaining that "[t]he United States, as sovereign, is immune from suit except as it waives its immunity, and the terms of its waiver, as set forth expressly and specifically by Congress, define the parameters of a federal court's subject matter jurisdiction to entertain suits brought against it." *Id.* We stated that "[a]ssuming that [the plaintiff] present[ed] a valid Fifth Amendment taking claim, the *only* express waiver of sovereign immunity which vests the district court with jurisdiction over taking claims against the United States [was the Little Tucker Act] and it limits the district court jurisdiction to claims involving $10,000 in damages or less." *Id.* (emphasis added). We said that "this court cannot, by using the judge-made doctrine of pendent jurisdiction waive the immunity of the United States where Congress, constitutional guardian of this immunity, has declined to do so." *Id.* at 1287 (citation omitted and alteration adopted). "[S]ince the government

No. 17-50201

[had] not specifically consented to such a claim," the district court was "powerless to entertain the claim." *Id.* That holding necessarily assumes that the Fifth Amendment does not provide a self-executing waiver of sovereign immunity. We have reached a similar result in other cases.[9]

Because, under our binding precedent, the United States's sovereign immunity can bar cases against it based on the Takings Clause, those cases fall into the "public rights" category. *See Stern*, 564 U.S. at 489. Thus, Congress can constitutionally require such cases to be heard in an Article I court, as it did in the Tucker Act. *Id.* So Sammons's constitutional challenge to the Tucker Act fails, and the court properly dismissed for want of jurisdiction.

The judgment of dismissal is AFFIRMED.

---

[9] *E.g.*, *Wilkerson v. United States*, 67 F.3d 112, 119 & n.13 (5th Cir. 1995) (holding that a district court had no jurisdiction to hear a takings claim because "there [was] no waiver [of sovereign immunity] except to have the claims heard in the Court of Claims"); *United States v. Land*, 213 F.3d 830, 837 (5th Cir. 2000) (holding that landowners could not challenge certain aspects of a condemnation damages award because, among other reasons, Congress had not waived sovereign immunity).