**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 16, 2011

No. 10-50354

Lyle W. Cayce
Clerk

LIFE PARTNERS INC.; UNITED WESTERN TRUST COMPANY,

Plaintiff-Appellants,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, ELROD, and HAYNES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Plaintiffs, Life Partners Inc. and United Western Trust Company (hereinafter Life Partners), appeal from the district court's order granting the United States' motion to dismiss for lack of subject matter jurisdiction. We AFFIRM.

I.

The facts are undisputed. Life Partners is in the business of purchasing at a reduced price existing life insurance polices that are owned by elderly or terminally-ill individuals. Those individuals then assign their rights in the

1

policies to Life Partners, who collects the proceeds on behalf of their investors upon the death of the insured. In 2002, Life Partners attempted to purchase a Federal Employee Group Life Insurance policy belonging to S.D., an employee of the Small Business Administration (SBA). Prior to purchasing the policy, Life Partners contacted the SBA to confirm that S.D.'s policy had not been assigned to any other party. The United States admits that an employee of the SBA assured Life Partners that the policy had not been previously assigned, and that its assurance was a misrepresentation; it further admits that the employee did not review S.D.'s file to confirm the accuracy of the statement. After receiving assurance that the policy had not been assigned, Life Partners agreed to buy S.D.'s policy.

Unbeknownst to Life Partners, S.D. had previously assigned the policy. Joan Redd, an SBA employee, had completed that assignment and recorded it in S.D.'s personnel file. When he later contacted Redd to assign the policy to Life Partners, she refused based on the prior assignment. She then contacted another employee of SBA, Sharon Taylor, whom she knew to be friends with S.D., to tell her that she should not complete any assignment related to the policy because it had already been assigned.

Nonetheless, when S.D. later approached Taylor, she completed the paperwork reflecting that the SBA had received the assignment, despite her knowledge that it had already been assigned. She did not review S.D.'s file or any other records relating to the policy before signing the document, in violation of the SBA's policy. Believing the policy to be unassigned, and after Taylor had completed the paperwork, Life Partners paid S.D. for the policy. Four years after its purchase, in September 2006, Life Partners attempted to convert the policy to an individual insurance policy. The SBA then informed Life Partners

for the first time that the policy had been previously assigned.

Life Partners filed an administrative claim with the SBA, alleging that it "relied on the SBA's representations reasonably and in good faith, which representations were false. The SBA misrepresented . . . that the coverage had not been previously assigned . . . ." The SBA denied Life Partners' claims based on 28 U.S.C. § 2680(h), which exempts claims arising out of a misrepresentation from those for which sovereign immunity is waived in the Federal Tort Claims Act (FTCA). Life Partners then filed a motion for reconsideration with the SBA, arguing that its claim was not barred because it stemmed from the SBA's negligence in failing to keep appropriate records of the prior assignment. The SBA again denied the claim. Life Partners then filed suit in district court against the United States, alleging negligence in record-keeping and the administration of S.D.'s policy. The district court granted the United States' motion to dismiss for lack of subject matter jurisdiction, holding that "[t]he actions of SBA fit the definition of negligent misrepresentation exactly."

## II.

This court reviews the grant of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction *de novo*. *Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995). The party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The court takes as true all of the allegations of the complaint and the facts set out by the plaintiff. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 553 (5th Cir. 2010). The dismissal will not be affirmed "unless it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim which would entitle [them] to relief." *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992)

(alterations in original) (internal quotation marks omitted).

### III.

As an initial matter, we must determine whether Life Partners properly exhausted its administrative remedies. An action cannot be brought against the United States for the negligent act of one of its employees "unless the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). That requirement is a prerequisite to suit under the FTCA. *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989). Its purpose is "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994) (internal quotation marks omitted).

To fulfill that requirement, an FTCA claimant must provide the agency with "facts sufficient to allow his claim to be investigated." *Cook v. United States*, 978 F.2d 164, 166 (5th Cir. 1992). "This court has not required plaintiffs to specifically enumerate legal theories of recovery in their administrative claims." *Frantz*, 29 F.3d at 224. As long as "the Government's investigation of [the] claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim." *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980). Based on that standard, we have held that a plaintiff adequately exhausted his administrative remedies because his claim for medical negligence should have revealed the possibility of an informed consent claim. *Frantz*, 29 F.3d at 224.

We need not reach the question of whether the filing of a claim alleging only facts and theories that are clearly barred exhausts administrative remedies as to claims that may not be barred. Here, Life Partners' original

administrative claim alleged that "the SBA confirmed via facsimile that Life Partners, Inc. had been assigned ownership of the coverage at issue." Although it also, and primarily, alleged misrepresentation, a plaintiff's "specifically enumerate[d] legal theor[y]" does not alone resolve the issue. *See id.* Regardless of how it was characterized, Life Partners' allegation arguably should have triggered an investigation into whether the SBA's records incorrectly reflected that the policy had not been previously assigned.

Furthermore, even if the initial claim were not sufficient to provide notice to the SBA, the SBA was specifically presented with the exact claim brought on appeal—negligent record-keeping—in Life Partners' motion for reconsideration to the SBA. Specifically, the motion stated that "[a]lthough the Claimants' claim is couched in terms of misrepresentation claim [sic], the 'focal point of the claim' is the USBA's failure to properly administer this . . . coverage and retain proper documentation for the coverage." The SBA again denied the claim. Thus, we conclude that the SBA had the opportunity to investigate and evaluate the claim and consider the need, if any, to settle its liabilities, satisfying the purposes of the exhaustion requirement here. Accordingly, Life Partners exhausted its administrative remedies.

IV.

We next consider whether Life Partners' claims for negligent record-keeping and administration are essentially claims of misrepresentation, such that they are barred by the FTCA. Life Partners argues that "[t]he gravamen of Plaintiffs' complaint against Defendant is Defendant's negligent failure to administer the S.D. policy, not Defendant's admitted failure to communicate correct information." Specifically, it argues that SBA "negligently fail[ed] to adequately examine the records of the S.D. policy prior to executing, processing,

5

and recording the assignment."

The United States has partially waived its sovereign immunity in the FTCA, which subjects the United States to tort liability if a private person would be liable for the same act under state law. 28 U.S.C. § 1346(b) (waiving sovereign immunity for any "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"). However, the FTCA also includes several exceptions to that waiver, including "[a]ny claim arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 2680(h). That exception bars claims for both negligent and intentional misrepresentation. *Block v. Neal*, 460 U.S. 289, 295-96 (1983).

The Supreme Court has considered the scope of the misrepresentation exception in two leading cases, *United States v. Neustadt*, 366 U.S. 696 (1961), and *Block*, 460 U.S. 289. In *Neustadt*, the Court held that a suit alleging that the plaintiffs bought a home for more than it was worth based on a negligent appraisal was barred. 366 U.S. at 711. The plaintiffs alleged that the inaccurate appraisal resulted from a negligent inspection, not from a misrepresentation. *Id.* at 704-05. The Court, however, held that the damage, the payment of a purchase price in excess of the home's fair market value, arose out of negligent misrepresentation, even if the government also negligently conducted the inspection. *Id.*; *see Ware v. United States*, 626 F.2d 1278, 1283 (5th Cir. 1980). The plaintiffs would not have purchased the home, and therefore suffered the harm, without the misrepresentation.

In *Block*, the Court distinguished *Neustadt*, holding that a similar claim

6

was not barred. 460 U.S. at 296. There, after the plaintiff contracted for the construction of a home, the Farmers Home Administration (FmHA) agreed to supervise construction. *Id.* The FmHA employee inspected the home three times, issuing a final report indicating that the construction accorded with the specifications approved by the FmHA. When the plaintiff bought the home and later discovered extensive defects, she sued the FmHA. Although the government argued that Neal's damages were caused by the inspection reports, and therefore her claim was barred as one for misrepresentation, the Court held that the injury Neal alleged, a defective house, arose from the FmHA's failure to oversee construction. *Id.* at 297-98. The plaintiff alleged an injury she "would have suffered independently of [her] reliance on the erroneous [representation]." *Id.* at 296-97. The plaintiff's reliance on the FmHA's misrepresentation did not cause the defects in the home; rather, they were caused by the FmHA's negligence in failing to oversee construction.

Based on those cases, this circuit uses a two-step process for determining whether a claim is barred. *Commercial Union Ins. Co. v. United States*, 928 F.2d 176, 179 (5th Cir. 1991). First, we determine whether "the chain of causation" from the alleged negligence to the injury depends upon a misrepresentation by a government agent.[1] *Id.* Or, put another way, whether

---

[1] Life Partners argues that its claim should be allowed to proceed because Texas recognizes a voluntary-undertaking claim. This argument is foreclosed by the language of the exception, which states that "[t]he provisions of this chapter and section 1346(b) of this title shall not apply" if one of the exceptions applies, regardless of whether the claim is valid under state law. *United States v. Neustadt*, 366 U.S. 696, 705 n.15 (1961). As the Supreme Court held in *Neustadt*, "[w]hether or not this analysis [of whether a claim is one for misrepresentation] accords with the law of States which have seen fit to allow recovery under analogous circumstances, it does not meet the question of whether this claim is outside the intended scope of the Federal Tort Claims Act, which depends solely upon what Congress meant by the language it used in § 2680(h)." *Id.* at 705-06 (footnote omitted). We therefore need not address Texas law.

"the underlying governmental conduct essential to the plaintiff's claim can be fairly read to arise out of conduct that would establish an excepted cause of action." *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993) (internal quotation marks omitted). We consider whether "the focal point of the claim is negligence in the communication of (or failure to communicate) information or negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance." *Metro. Life Ins. Co. v. Atkins*, 225 F.3d 510, 512 (5th Cir. 2000). Life Partners' choice of pleading is not controlling. *Saraw P'ship*, 67 F.3d at 570. Instead, "we focus on the conduct upon which the plaintiff's claim is based." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Second, if the plaintiff's claim does depend on a misrepresentation, we must determine "whether Congress has nonetheless waived sovereign immunity independently of the FTCA." *Commercial Union*, 928 F.2d at 179. Because Life Partners does not allege any applicable waiver of sovereign immunity outside the FTCA, this case turns on the first step.

The FTCA's misrepresentation exception is broad: it bars any claim arising out of a misrepresentation—even if the conduct underlying the claim may also constitute a tort not barred by section 2680(h). *McNeily*, 6 F.3d at 347; *see also Jeanmarie v. United States*, 242 F.3d 600, 604 (5th Cir. 2001) (noting that we construe waivers of sovereign immunity strictly in favor of the sovereign). "[T]he line between what constitutes a permissible negligence claim and a barred misrepresentation claim has not been clearly delineated." *Saraw P'ship*, 67 F.3d at 570.

Even so, a close look at our case law involving the FTCA's misrepresentation exception provides guidance. In *Atkins*, a case also involving insurance beneficiaries, we reversed the dismissal of a claim alleging that the

government had improperly failed to include the beneficiary form signed by the decedent in his file.  225 F.3d at 511-12.  The district court held, and the government argued, that the claim was one for misrepresentation because the federal employee had failed to communicate to the decedent that his personnel file did not include a signed copy of the beneficiary form.  *Id.* at 512.  We held that the injury was caused by the government's failure to keep the signed form, irrespective of any failure to communicate.  *Id.*  Because the injury arose from the negligent performance of an operational task, it was not barred.

We have also held that a claim was not barred when the Veterans' Administration failed to enter the plaintiff's loan payment properly, resulting in foreclosure of the plaintiff's property.  *Saraw P'ship*, 67 F.3d at 571.  The government argued that any injury was caused by the government's failure to communicate that it had not received the plaintiff's payment.  *Id.* at 570-71.  We rejected that argument, holding, "This case is not about reliance on faulty information or on the lack of proper information; rather, the gist of this case is the government's careless handling of Saraw's loan payments."  *Id.*

Likewise, we have reversed the dismissal of a claim alleging that the Department of Agriculture mis-diagnosed and then itself killed a rancher's cattle.  *Ware*, 626 F.2d at 1282-83.  The government argued that the claim was barred because a mis-diagnosis is a misrepresentation.  We noted, however, that the plaintiff had not taken any action in reliance on that mis-diagnosis, which is required for a misrepresentation claim; rather, the government had killed the cattle, causing the damage itself.  *Id.* at 1283.  "The government's misrepresentation caused Ware to do nothing save remain in ignorance that he had suffered a compensable loss."  *Id.*  Importantly, the misrepresentations in the above cases were merely collateral to the focal point of the claims,

9

"negligence in the performance of an operational task." *See Atkins*, 225 F.3d at 512.

In contrast, we have affirmed the dismissal of a claim based on the FHA's miscalculation of the predicted 50-year flood plane when approving a subdivision plan, holding that the damages sought resulted "solely from the fact that the government communicated its miscalculation to the developer who relied on it, and that reliance eventually caused the plaintiffs' damages." *Baroni v. United States*, 662 F.2d 287, 289 (5th Cir. 1981); *see also McNeily*, 6 F.3d at 347. We also affirmed the dismissal of a claim based on the FmHA's unfulfilled promise to give a farmer a loan if he sold some of his land, which in turn caused him to be ineligible for the loan. *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 378 (5th Cir. 1987). Because the plaintiff had relied on the FmHA's representation that he would receive a loan in selling his land, his claim was barred. *Id.* In sum, a claim for injury arising from a plaintiff's reliance on a misrepresentation is barred by the FTCA; a claim alleging injury independent of the misrepresentation, such as one in which government action directly caused the injury, is not barred. *See Ware*, 626 F.2d at 1282-83.

In the instant case, Life Partners' injury, the purchase of a previously-assigned policy, arose from its action in reliance on the SBA's misrepresentations. Life Partners has not alleged any specific facts to establish that the SBA performed an operational task negligently. The injury did not result from negligent record-keeping like in *Atkins*, as Life Partners alleges; rather, at all times, the records properly reflected that the policy had previously been assigned. Nor did it result from Taylor's administering the assignment "without first checking for any previous assignments"; Taylor admitted that she had actual knowledge that the policy had previously been assigned at the time

10

she conveyed the incorrect information to Life Partners. More importantly, even assuming the SBA had performed a task negligently, Life Partners has not established that any such negligence caused its injury.[2] Simply put, Life Partners would have suffered no injury absent the misrepresentation, because it otherwise would not have purchased the policy. Life Partners' claim is therefore barred as one for misrepresentation.

## V.

While we certainly do not condone the intentional misrepresentation made by the government employee here, neither can we ignore the plain meaning of the statute limiting the scope of the United States' tort liability. Life Partners did exhaust its administrative remedies, but its claim arises out of a misrepresentation and is barred by the FTCA. As a result, we AFFIRM.

---

[2] At oral argument, Life Partners argued that the SBA had negligently accepted the assignment document without determining whether the policy had been previously assigned, which caused Life Partners' injury. Life Partners did not make this argument in its brief, however. "Failure adequately to brief an issue on appeal constitutes waiver of that argument." *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004). As such, we do not consider this argument. Nonetheless, even if we were to consider the SBA's acceptance of the assignment document, any negligence in doing so did not cause Life Partners' injury. S.D. assigned the policy to Life Partners with no involvement by the SBA other than Taylor's misrepresentation. The assignment was already complete when SBA accepted the document. This after-the-fact acknowledgment did not cause Life Partners to purchase the policy.