OWEN, Circuit Judge:
Plaintiffs sued the Secretary of the Louisiana Department of Health and Hospitals (the Secretary or the Department), challenging the constitutionality of Louisiana’s Act 490. Prior to hearing the merits, the *712 district court granted the Secretary’s motion to dismiss, holding that the claims were not ripe. We affirm the district court’s decision to dismiss the claims because Plaintiffs have failed to show that hardship will result from withholding court consideration at this time.
I
A
Act 490, enacted in 2010, amended Louisiana’s Outpatient Abortion Facility Licensing Law of 2001. Specifically, Act 490 amended Section 40:2175.6 by removing a provision that provided that the procedure for denial, suspension, or revocation of an outpatient abortion facility (OAF) license would be the same as that for hospitals.[1] The revised section provides:
The [Secretary of the [Department may deny a license, may refuse to renew a license, or may revoke an existing license, if an investigation or survey determines that the applicant or licensee is in violation of any provision of this Part, in violation of the licensing rules promulgated by the [Department, or in violation of any other federal or state law or regulation.[2]
Previously, the Secretary could deny, suspend, or revoke a license only after finding a “substantial failure ... to comply,” but Act 490 only requires a determination that there has been a “violation” for the Secretary to deny, refuse to renew, or revoke a license.[3] Act 490 also grants the Secretary new authority to deny, refuse to renew, or revoke a license if the applicant or licensee violates “any other federal or state law or regulation.”[4] While the right to file a suspensive appeal (suspending the execution of the judgment) with the office of the Secretary is retained, Act 490 does not include the prior provision that granted a right to appeal suspensively to a district court for trial de novo.[5] Act 490 still requires the Secretary to provide thirty days written notice before denying, refusing to renew, or revoking a license.[6]
Act 490 also authorizes the Secretary to issue an immediate suspension in some circumstances:
[T]he [Secretary ... may issue an immediate suspension of a license if an investigation or survey determines that the applicant or licensee is in violation of any provision of this Part, in violation of the rules promulgated by the [Department, or in violation of any other federal or state law or regulation, and the [SJecretary determines that the violation or violations pose an imminent or immediate threat to the health, welfare, or safety of a client or patient.[7]
The Secretary must give written notice of an immediate suspension, and the suspension becomes effective upon receipt of such notice.[8] If the Secretary issues an immediate suspension, the licensee has the right to file a devolutive appeal (not suspending *713 execution of the judgment), or the licensee can seek injunctive relief in district court.[9] To obtain injunctive relief, the licensee must prove “by clear and convincing evidence that the [Secretary's decision ... was arbitrary and capricious.”[10] No longer is there any requirement that the licensee be “given an opportunity to show compliance with all lawful requirements for the retention of the license.”[11]
Finally, Act 490 added a new provision, which provides:
If a license is revoked or renewal of a license is denied other than for cessation of business or non-operational status, or if the license is surrendered in lieu of an adverse action, any owner, officer, member, manager, director, or administrator of the licensee may be prohibited from owning, managing, directing, or operating another outpatient abortion clinic in the state of Louisiana.[12]
B
The petitioners in this case are Choice Inc. of Texas; Bossier City Medical Suite, Inc; Delta Clinic of Baton Rouge, Inc.; Midtown Medical, L.L.C.; and Women’s Health Care Center, Inc., five of the seven licensed OAFs in Louisiana, and John Doe, M.D., a physician who provides abortion services at some of those facilities. We will refer to these parties collectively as “Choice.” Although Act 490 has not been enforced against Choice, it filed a preenforcement challenge to Act 490’s constitutionality in federal district court, seeking a declaratory judgment and injunctive relief. Choice raised four constitutional challenges to Act 490: (1) it is unconstitutional under the Due Process Clause because it fails to give OAFs fair notice of the conditions of licensure and encourages arbitrary and discriminatory enforcement; (2) it violates the OAFs’ rights under the Equal Protection Clause by treating them differently from all other medical facilities regulated by the Department without any basis for doing so; (3) it violates the OAFs’ rights to due process because it deprives them of liberty and property interests in an arbitrary, unreasonable, and capricious manner and invests an impermissible degree of subjective discretion in the Secretary; and (4) it violates the fundamental right to terminate a pregnancy guaranteed by the Fourteenth Amendment by imposing a substantial obstacle in the path of patients seeking to obtain pre-viability abortions.
In challenging Act 490, Choice does not rely solely on the changes in statutory language previously described. Choice also notes that the other two OAFs in Louisiana, Hope Medical Group for Women (Hope) and Gentilly Medical Clinic for Women (Gentilly), neither a party to this litigation, are currently subject to revocation proceedings. In particular, Choice relies on the enforcement action against Hope to challenge the Department’s implementation of Act 490. The thrust of Choice’s argument is that the Department’s actions evince a new policy, pursuant to which the Department will no longer provide an OAF with notice of alleged deficiencies and an opportunity to correct them before suspending or revoking the OAF’s license.
*714 C
Prior to hearing the merits of Choice’s claims, the district court granted the Secretary’s motion to dismiss. Considering the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court held that the claims were not ripe, determining that Choice “[would] not suffer any significant hardship” and that “the issues [were] not fit for judicial decision at the present time.” With respect to hardship, the district court determined that “nothing in Act 490 requires [Choice] to alter [its] conduct; instead, it alters the State’s conduct in detecting and addressing violations.” Additionally, the court noted that although Act 490 broadened the universe of laws the violation of which could result in an adverse licensure decision, Choice was “legally obligated to adhere to those statutes and regulations notwithstanding Act 490.” With respect to fitness for judicial decision, the court concluded that Act 490 had yet to be enforced “in such a ‘Draconian’ fashion” as feared by Choice, and that “it is pure speculation to say that [Choice] may one day be subject to the provisions in Act 490 of which [it] complaints].” Furthermore, the court viewed the Department’s enforcement action against Hope as “too isolated” to assist in the evaluation of Choice’s claims. Choice now appeals, arguing that the district court erred in its ripeness analysis.
II
A district court’s grant of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is reviewed de novo,[13] and more specifically, the jurisdictional issue of ripeness is a legal question for which review is de novo.[14] The plaintiff, as the party asserting jurisdiction, bears the burden of proof.[15] In assessing jurisdiction, the district court is to accept as true the allegations and facts set forth in the complaint.[16] Additionally, “the district court is empowered to consider matters of fact which may be in dispute.”[17]
The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court’s resolution of disputed facts.[18]
“[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.”[19]
III
A
Article III of the United States Constitution provides that federal courts *715 have the power to decide only actual cases or controversies.[20] The justiciability doctrines of standing, mootness, political question, and ripeness “all originate in Article Ill’s ‘case’ or ‘controversy’ language .... ”[21] The ripeness doctrine also is drawn “ ‘from prudential reasons for refusing to exercise jurisdiction.’ ”[22] The ripeness doctrine’s “basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ;>[23]
“A court should dismiss a case for lack of ‘ripeness’ when the case is abstract or hypothetical.”[24] “The key considerations are ‘the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.’ ”[25] “A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.”[26] However, “even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness.”[27] Thus, we must first determine if Choice has shown that hardship will result if court consideration is withheld at this time.
B
“The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being ‘force[d] ... to modify [one’s] behavior in order to avoid future adverse consequences.’ ”[28] In its briefing to this court, Choice relies on the last of these harms in arguing that the district court erred in dismissing its claims for lack of ripeness, asserting that “[t]he complaint plainly supports a finding that Plaintiffs have been forced to change their conduct as a result of the Act and Policy in order to attempt to avoid the severe new penalties that can arise from the new broader, and ill-defined, set of standards” imposed on OAFs. We conclude that the district court did not err in holding that Choice failed to show that hardship will result from withholding court consideration at this time.
Relying primarily on Roark & Hardee LP v. City of Austin,[29] Choice argues that it can satisfy the hardship-prong of the ripeness inquiry because it has been “forced to operate in a heightened state of vigilance” in which it is required to “undertake all steps possible to try to predict *716 which laws the Department will enforce and how it will interpret them, and try to come into compliance with those expectations in order to avoid closure.” In Roark, this court held that the plaintiffs would suffer hardship if the court denied review of a city ordinance making it a misdemean- or for an owner or operator of a public place to fail to take the necessary steps to prevent or stop another person from smoking.[30] The plaintiffs in Roark, however, faced a different situation than that faced by Choice.
In Roark, the challenged ordinance imposed a new, affirmative obligation on owners and operators of public places, which created a critical dilemma — a choice between complying with a law thought invalid or continuing to act in a manner believed to be lawful but which could result in future adverse consequences if the law in question were later upheld.[31] With regard to Act 490, there is no such dilemma. Act 490 imposes no new, affirmative obligation on OAFs; OAFs are required to comply with existing and applicable state or federal statutes or regulations regardless of Act 490’s existence. There is no dilemma because an OAF does not seek to continue to act in a manner believed to be lawful that would violate Act 490; actions violating Act 490 are already unlawful. The presence of such a dilemma has been a central feature of cases in which the hardship prong of the ripeness inquiry was held to be satisfied on modification-of-behavior grounds, and its absence here supports our conclusion that Choice will not suffer hardship if court consideration is withheld at this time.[32]
The dissent does not rely on the presence or absence of such a dilemma. Instead, the dissent accepts Choice’s argument that it has been forced to modify its behavior because Act 490’s enactment has forced it to operate “in a heightened state of vigilance,” explaining that “[t]he coercive impact of Act 490 is already imposing on plaintiffs the burden of attempting to adjust their business practices in response to being uniquely exposed to exceptionally severe penalties for even minor violations of any state or federal law or regulation.”[33] While the dissent depicts the “coercive impact” of Act 490 as self-evident, we note that Choice has not identified a single concrete example of how it has been forced to modify its behavior as a result of Act 490.
In its briefing to this court, and during oral argument, Choice argued that it satisfies the hardship prong because the process for challenging an immediate suspension might render it insolvent before its appeal can be heard. Act 490 limits the means by which a licensee may challenge the Secretary’s decision to issue an imme *717 diate suspension: a licensee is limited to either (1) filing a devolutive appeal with the office of the Secretary or (2) filing for injunctive relief in state district court, in which case the licensee must “prove by clear and convincing evidence that the [Secretary’s decision ... was arbitrary and capricious.”[34] If an OAF files a devolutive appeal, the suspension remains in effect, closing the business and preventing it from generating revenue during the appeals process. If an OAF seeks an injunction so that it may remain in operation during the appeals process, it must satisfy a heightened standard.
While Act 490 imposes a heightened standard when a licensee seeks to challenge the Secretary’s determination that the legal requirements for issuance of an immediate suspension have been satisfied in a specific case, Act 490’s heightened standard does not apply to the constitutional claims that Choice has asserted in this case. The dissent fails to acknowledge this distinction. If, in the future, the Secretary issues an immediate suspension of Choice’s license based on a determination that Choice is in violation of the law and that the violation “pose[s] an imminent or immediate threat to the health, welfare, or safety of a client or patient,” Choice may challenge Act 490’s constitutionality, and Act 490’s standard of review would not apply to such constitutional claims. Furthermore, Choice would be free to seek a preliminary injunction based on its constitutional claims in order to avoid being closed while it litigates them.[35] The standard requirements for issuance of a preliminary injunction would apply because Choice would not be challenging the Secretary’s determination that the legal requirements for issuance of an immediate suspension have been satisfied. It would be challenging the constitutionality of Act 490 itself. Thus, we are not convinced that Choice will suffer hardship if court consideration is withheld at this time.
The dissent asserts that we have clearly erred by failing to appreciate what it considers to be “obvious legal harms.”[36] The two legal harms identified by the dissent, which Choice did not rely upon in its appellate briefs, are not as clear as the dissent makes them out to be. The dissent cites three court decisions that repeat language indicating what might constitute legal harm, but in each of those cases, that language explained what the regulation in question was not; the language was not applied to hold that the regulation was ripe for review in the manner that it is used by the dissent.[37] It remains unclear what constitutes “modifying] [a] formal legal license,”[38] and one might even question whether modification — as opposed to granting or withholding the license itself— is sufficient, as the case that Ohio Forestry purported to paraphrase did not mention modification.[39] None of these three cases *718 holds that legal harm is sufficiently demonstrated when there is a change in the liability imposed for acts already prohibited. Since Choice has elected on appeal to argue that there is sufficient hardship because it has been forced to modify its behavior, we, unlike the dissent, see no need to develop arguments Choice has chosen not to make.
We hold that Choice has not satisfied the hardship prong of the ripeness inquiry. We do not address the fitness of the issues for judicial decision.[40] Because Choice has not satisfied the hardship prong, the district court did not err in concluding that Choice’s claims should be dismissed for lack of ripeness.
* * *
AFFIRMED.

. 2010 La. Acts 490 (codified at La.Rev.Stat. Ann. § 40:2175.6 (Supp.2012)).

. La.Rev.Stat. Ann. § 40:2175.6(G) (Supp. 2012).

. Compare La.Rev.Stat. Ann. § 40:2175.6(G) (2008), and id. § 40:2110(A), with La.Rev. Stat. Ann. § 40:2175.6(G) (Supp.2012).

. Compare La.Rev.Stat. Ann. § 40:2175.6(G) (2008), and id. § 40:2110(A), with La.Rev. Stat. Ann. § 40:2175.6(G) (Supp.2012).

. Compare La.Rev.Stat. Ann. § 40:2175.6(G) (2008), and id. § 40:2110(B)-(C), with La.Rev. Stat. Ann. § 40:2175.6(G) (Supp.2012).

. Compare La.Rev.Stat. Ann. § 40:2175.6(G) (2008), and id. § 40:2110(A), with La.Rev. Stat. Ann. § 40:2175.6(G)(1) (Supp.2012).

. La.Rev.Stat. Ann. § 40:2175.6(H) (Supp. 2012) (emphasis added).

. Id. § 40:2175.6(H).

. Id. § 40:2175.6(H)(l)-(2).

. Id. § 40:2175.6(H)(2).

. Compare La.Rev.Stat. Ann. § 49:961(C) (2003), with La.Rev.Stat. Ann. § 40:2175.6(H) (Supp.2012).

. La.Rev.Stat. Ann. § 40:2175.6(1) (Supp. 2012).

. Life Partners Inc. v. United States, 650 F.3d 1026, 1029 (5th Cir.2011).

. Lopez v. City of Houston, 617 F.3d 336, 339 (5th Cir.2010).

. Life Partners, 650 F.3d at 1029; see also Ramming v. United States, 281 F.3d 158, 161 (5th Cir.2001) (''[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.”).

. Life Partners, 650 F.3d at 1029 (citing Ass’n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd., 627 F.3d 547, 553 (5th Cir.2010)).

. Ramming, 281 F.3d at 161 (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.1981)).

. Williamson, 645 F.2d at 413; see also Wolcott v. Sebelius, 635 F.3d 757, 762 (5th Cir.2011).

. Ramming, 281 F.3d at 161 (citing Home Builders Ass’n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir.1998)).

. U.S. Const, art. Ill, § 2.

. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006).

. Nat'l Park Hospitality Ass’n v. Dep’t of Interior, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)).

. Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

. New Orleans Pub. Serv., Inc. v. Council of New Orleans, 833 F.2d 583, 586 (5th Cir.1987) (citing Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 581-82, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985); Socialist Labor Party v. Gilligan, 406 U.S. 583, 588-89, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972)).

. Id. (quoting Abbott Labs., 387 U.S. at 149, 87 S.Ct. 1507).

. New Orleans, 833 F.2d at 587 (citing Thomas, 473 U.S. at 581-82, 105 S.Ct. 3325).

. Cent. & S.W. Servs., Inc. v. EPA, 220 F.3d 683, 690 (5th Cir.2000).

. Texas v. United States, 497 F.3d 491, 499 (5th Cir.2007) (quoting Ohio Forestry Ass’n v. Sierra Club, 523 U.S. 726, 734, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998)).

. 522 F.3d 533 (5th Cir.2008).

. Roark, 522 F.3d at 545.

. See id. at 539, 545-46 (explaining that the necessary-steps provision was a new restriction that the ordinance placed on owners or operators of public places and describing the plaintiffs' constitutional challenge to its application).

. See Abbott Labs. v. Gardner, 387 U.S. 136, 152-53, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (relying on the dilemma created by the manufacturers being forced to choose between complying with the regulation and incurring the associated compliance costs or continuing to act in a manner "they believe in good faith meets the statutory requirements, but which clearly does not meet the regulation” and potentially facing more costly criminal and civil penalties); see also Texas v. United States, 497 F.3d 491, 499 (5th Cir.2007) (“If Texas cannot challenge the Procedures in this lawsuit, the State is forced to choose one of two undesirable options: participate in an allegedly invalid process that eliminates a procedural safeguard promised by Congress, or eschew the process with the hope of invalidating it in the future, which risks the approval of gaming procedures in which the state had no input.”).

.Infra at 727.

. La.Rev.Stat. Ann. § 40:2175.6(H)(l)-(2) (Supp.2012).

. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.”).

. Infra at 720.

. See Nat’l Park Hospitality Ass’n v. Dep't of Interior, 538 U.S. 803, 809, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003); Ohio Forestry Ass’n v. Sierra Club, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998); Texas v. United States, 497 F.3d 491, 499 (5th Cir.2007).

. Ohio Forestry, 523 U.S. at 733, 118 S.Ct. 1665.

. United States v. L.A. & Salt Lake R.R. Co., 273 U.S. 299, 310, 47 S.Ct. 413, 71 L.Ed. 651 (1927).

. See Cent. & S.W. Servs., Inc. v. EPA, 220 F.3d 683, 690 (5th Cir.2000) (explaining that hardship must be shown to establish ripeness).