PATRICK E. HIGGINBOTHAM, Circuit Judge,
dissenting:
I am not persuaded that this controversy meets Article Ill’s demand of ripeness, injury, and adversarial engagement. Nor am I persuaded that we have been called upon to review an action of the EEOC with sufficient finality to support our jurisdiction. Texas seeks to challenge an EEOC “Enforcement Guidance” document that the EEOC cannot enforce against it. This description should be enough to resolve this case. I must dissent.
I.
On April 25, 2012, the EEOC issued the “Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964.” The Guidance sets forth the EEOC’s legal position that “[a]n employer’s use of an individual’s eriminal history in making employment decisions may, in some instances, violate the prohibition against employment discrimination under Title VII of the Civil Rights Act of 1964.” The Guidance’s principal observation is that blanket bans on hiring individuals with criminal records — or “criminal record exclusions” — have a disparate impact on minorities. As the majority recounts, the Guidance thus warns that blanket “criminal record exclusions” may violate Title VII unless they are “job related and consistent with business necessity.”
On November 4, 2013, the State of Texas filed a complaint seeking “[a] declaratory judgment holding unlawful and setting aside” the Guidance; and “[a] declaration and injunction that” the Department of Justice — the sole government body that can sue a state employer — “may not issue right-to-sue letters to persons seeking to sue the State of Texas or any of its constituent agencies or state officials based on the interpretation of Title VII that appears in” the Guidance. The EEOC moved to dismiss for lack of jurisdiction. The district court granted this motion, concluding that (1) Texas lacks standing to challenge the Guidance; (2) the Guidance is not a “final agency action”; and (3) Texas’s challenge to the Guidance is not ripe. Texas appealed to this Court.
II.
This Court lacks subject-matter jurisdiction if Texas does not have standing to *389 challenge the Guidance or if its challenge is not ripe. So, too, if the Guidance is not a “final agency action.”[1] Texas has the burden to establish that all three of these distinct but complementary requirements have been satisfied.[2]
A.
The history of Title VII and the creation of the EEOC provides critical context for this case. Congress enacted Title VII of the Civil Rights Act of 1964 to prohibit employers from “failing] or refusing] to hire ... any individual ... because of ... race, color, religion, sex, or national origin.” [3] The Act “created ... the Equal Employment Opportunity Commission,” headed by five commissioners, who are “appointed by the President by and with the advice and consent of the Senate” and “not more than three of whom shall be members of the same political party.”[4] The EEOC’s original powers of enforcement did not include the power to sue. On the contrary, the Commission was allowed only to “make an investigation of’ charges of discrimination and use informal methods of “conference, conciliation, and persuasion” to bring employers into compliance.[5] If these efforts failed, the Act authorized private suits “by the person claiming to be aggrieved,”[6] but not by the EEOC.
Congress, however, did authorize the Attorney General to file suit upon “reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII].”[7] In enacting this provision, Congress intended to “provide the government with a swift and effective weapon to vindicate the broad public interest in eliminating unlawful practices, at a level which may or may not address the grievances of particular individuals.”[8] Between 1964 and 1972, the Attorney General filed numerous pattern or practice suits pursuant to this authority.[9] Yet over those eight years, “Congress became convinced ... that the ‘failure to grant the EEOC meaningful enforcement powers [had proved] to be a major flaw in the operation of Title VII.’ ”[10] In 1972, Congress gave the EEOC the power to bring two types of suits against private employers alleged to have violated Title VII.[11] First, “[i]f ... the Commission [is] unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against *390 [the] respondent.”[12] And second, “[elective two years after the date of enactment,” Congress transferred the Attorney General’s power to bring pattern or practice suits to the EEOC.[13]
Notably, Congress did not give the EEOC the power to sue state agencies or employers. Rather, “[i]n the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court.”[14] Although this considered judgment by Congress does not resolve all of the issues presented here, the allocution of authority between the Attorney General and the EEOC speaks directly to the Article III questions of standing and ripeness, as well as the finality of the Guidance. Any challenge to the employment practices of a state employer can proceed only upon decision of the Attorney General, not the EEOC. This not only underscores the lack of a concrete controversy between the State of Texas and the EEOC, but also accents the reality that this case touches on sensitive political decisions bearing on the essence of dual sovereignty; In service of this fault line of shared sovereignty, Congress confined the power to sue states for violations of Title VII to a Cabinet-level member of the incumbent administration, a delicate call upon its powers under the Commerce Clause and Section 5 of the Fourteenth Amendment.[15] This structure must signify in our analysis.
B.
Turning first to Article III, the want of an adversarial engagement here is palpable. “Under Article III, § 2, of the Constitution, the federal courts have jurisdiction over this dispute between appellant[ ] and appellee! ] only if it is a ‘case’ or ‘controversy.’ This is a ‘bedrock requirement.’ ”[16] Indeed, “[n]o principle is more fundamental to the judiciary’s proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.”[17] This principle finds expression in the intertwined doctrines of standing and ripeness. Both require dismissal in this case.
“[T]he ‘irreducible constitutional minimum’ of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.”[18] While the *391 Guidance is a cloud on the political horizon, it inflicts no injury upon Texas. The majority concludes otherwise because Texas is the “object” of the EEOC’s action.[19] But that assertion cannot be sustained. There is no doubt that the EEOC would prefer that Texas follow the Guidance, but it lacks the authority to bring a suit enforcing that preference.[20] The EEOC may refer a case against Texas to the Attorney General, but the Attorney General has no obligation to adhere to the Guidance.[21] And if the Attorney General or a private citizen sues Texas, the Guidance is entitled to Skidmore deference[22] at best.[23] Indeed, as Texas fully concedes, the EEOC does not have the authority to issue a binding interpretation of Title VII.[24] As a result, Texas’s reliance on cases involving preemption is misplaced. The Guidance is not a substantive regulation — it can neither dictate the outcome of a Title VII action nor preempt state law.
The facts here are also distinguishable from this Court’s recent decision in Texas v. United States,[25] In Texas v. United States, a divided panel of this Court concluded that Texas had standing because it faced a “forced choice between incurring costs and changing its laws.”[26] Texas faces here no such choice — there is no financial penalty if it declines to change its hiring policies beyond the expense of a court proceeding, an expense it has elected to incur. In sum, Texas is left with the' argument that the EEOC has injured it by expressing its view of the law. As the D.C. Circuit has observed, “an injury typically is not caused when an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party.”[27] This is the “typical[]” case.
C.
Texas’s challenge is also not ripe. At least since Abbott Laboratories v. Gardner, the Supreme Court has recognized that a party may raise a pre-enforcement challenge to an agency action.[28] “That being said, pre-enforcement review is still subject to the constraints of the ripeness test.”[29] “In deciding whether an agency’s decision is, or is not, ripe for judicial review, the Court has examined both the ‘fitness of the issues for judicial decision’ *392 and the ‘hardship to the parties of withholding court consideration.’ ”[30] Generally, a challenge is fit for judicial decision if it “presents an issue that is ‘purely legal, and will not be clarified by further factual development.’ ”[31] That the issues here would be significantly aided “by further factual development” is an understatement. Texas has raised an abstract challenge that is unmoored from a specific “criminal record exclusion,” or even a class of “criminal record exclusions.” To be sure, Texas sprinkles some facts into its briefing, but only to illustrate the alleged absurdity of the EEOC’s position — not to demonstrate that a particular “criminal conduct exclusion” complies with Title VII. Such a theoretical challenge is not fit for judicial decision. Indeed, the Supreme Court has repeatedly warned that “[djeter-mination of the scope ... of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.”[32]
Texas responds that the facts are irrelevant because “the whole point of this suit is that the [Guidance] is facially invalid— irrespective of the factual circumstances in which EEOC or DOJ might invoke it.”[33] That is, Texas argues that this Court need not consider a specific “criminal record exclusion” because “the EEOC does not have legal authority to regulate employers’ refusals to hire felons.”[34] But the Guidance does not just address the disparate impact of the “blanket no felon-hiring policies” discussed in Texas’s briefing — it also covers a significant amount of less controversial terrain. The Guidance, for instance, contains an entire section about “Disparate Treatment Discrimination and Criminal Records.” In this section, the Guidance explains that “there is Title VII disparate treatment liability where the evidence shows that a covered employer rejected an African American applicant based on his criminal record but hired a similarly situated White applicant with a comparable criminal record” and provides several clarifying examples. Unless Texas disagrees with this elementary legal proposition, it cannot seriously contend that the Guidance is invalid “irrespective of the factual circumstances in which EEOC or DOJ might invoke it.” The validity of the Guidance must hinge on the specific circumstances in which it is deployed.
Moreover, the Supreme Court rejected an argument almost identical to the one raised here in a previous dispute between the State of Texas and the Federal Government. In Texas v. United States, Texas argued that its pre-enforcement challenge to the Voting Rights Act was fit for review because it “asked [the Court] to hold that under no circumstances” was the relevant conduct subject to the Act.[35] The Supreme Court declined to accept this invitation, explaining that it did “not have sufficient *393 confidence in [its] powers of imagination to affirm such a negative.” The Court’s reasoning is just as applicable here: “The operation of the statute is better grasped when viewed in light of a particular application.”[36] Regardless, Texas cannot show that it will suffer any hardship if this Court withholds adjudication.[37] The Guidance does not injure Texas in any way. If Texas is certain that its view of Title VII is correct, it faces no hardship in waiting for its day of vindication.
Texas’s challenge is also not ripe for the independent reason that it is uncertain whether the Guidance will ever be enforced against it. Even assuming the EEOC intends to sue every private employer who does not comply with the Guidance, it can only refer a case against the State of Texas to the Attorney General. The possibility that the Attorney General may act on that referral — and because of the non-binding Guidance — is not enough to make Texas’s challenge ripe. As the Supreme Court has oft-repeated, “[a] claim is not ripe for adjudication if it rests upon ‘contingent future events that may not occur as anticipated, or indeed may not occur at all.’ ”[38] In this respect, the facts of this case are far different from those of Abbott Laboratories, where the regulations under review had a “direct and immediate” impact on the plaintiffs and enforcement was a virtual certainty.[39] Rather, this Court faces facts similar to those presented in one of its companion cases, Toilet Goods Ass’n v. Gardner.[40] In Toilet Goods, the Court declined to review the challenged regulation because it “ha[d] no idea whether or when” it would be enforced.[41] The Court explained that it “believe[d] that judicial appraisal [was] likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here.”[42] This Court must abide by this seminal precedent.
D.
Apart from these two constitutional hurdles, I am not persuaded that the Guidance is a “final agency action.” “As a general matter, two conditions must be satisfied for agency action to be ‘final’: First, the action must mark the ‘consummation’ of the agency’s decisionmaking process — it must not be of a merely tentative or interlocutory nature.”[43] “And sec *394 ond, the action must be one by which 'rights or obligations have been determined,’ or from which ‘legal consequences will flow.’ ”[44] In describing the legal position the EEOC will take in enforcement proceedings, the Guidance delineates “[t]wo circumstances in which the Commission believes employers will consistently meet the ‘job related and consistent with business necessity’ defense”:
• The employer validates the criminal conduct screen for the position in question per the Uniform Guidelines on Employee Selection Procedures (Uniform Guidelines) standards (if data about criminal conduct as related to subsequent work performance is available and such validation is possible); or
• The employer develops a targeted screen considering at least the nature of the crime, the time elapsed, and the nature of the job ..and then provides an opportunity for an individualized assessment for people excluded by the screen to determine whether the policy as applied is job related and consistent with business necessity.
Texas argues that these “[t]wo circumstances” create legally binding “safe harbors.” That is, Texas urges that the EEOC has effectively promised not to bring an enforcement action against any employer with a “criminal record exclusion” that fits within one of the “[t]wo circumstances.” The EEOC responds that the Guidance merely expresses its view of the law and carries no legal consequences. The majority embraces Texas’s position, relying heavily on the Supreme Court’s recent de-cisión in United States Army Corps of Engineers v. Hawkes Co.[45]
In Hawkes, the Court considered whether an “approved jurisdictional determination,” or JD, issued by the U.S. Army Corps of Engineers qualifies as a final agency action. The Corps issues JDs in conjunction with the enforcement of the Clean Water Act, which prohibits inter alia the discharge of pollutants into “the waters of the United States” without a permit. A JD advises a property owner whether her piece of property contains “waters of the United States.” It is “binding for five years on both the Corps and the Environmental Protection Agency, which share authority to enforce the Clean Water Act.” As the Court noted, this is significant because “[t]he Clean Water Act imposes substantial criminal and civil penalties for discharging any pollutant into waters covered by the Act without a permit from the Corps.”[46] On these facts, the Court readily concluded that a JD is a final agency action. The Court explained that a “negative JD” — that is, “an approved JD stating that a party’s property does not contain jurisdictional waters”— “creat[es] a five-year safe harbor” from Clean Water Act enforcement. “In other words, a negative JD both narrows the field of potential plaintiffs and limits the potential liability a landowner faces for discharging pollutants without a permit.” And from that, “[i]t follows that affirmative JDs have legal consequences as well: They represent the denial of the safe harbor that negative JDs afford.”[47]
The facts here are far different. A negative JD is a legally binding promise that *395 carries weighty consequences for the affected party.[48] The Guidance does not carry any consequences for any party. To the contrary, it merely expresses the EEOC’s view of the law, or the position that it may take in future enforcement actions. Texas insists that the Guidance goes further and creates two legally binding “safe harbors.” But the Guidance contains no definitive or mandatory language. Instead, it sets out “[t]wo circumstances in which the Commission believes employers will consistently meet the ‘job related and consistent with business necessity’ defense.” This mushy language cannot fairly be read as a promise to do anything. And even if it creates some level of practical pressure, this does not mean that it imposes legal consequences.[49]
There is, however, a more fundamental distinction between Hawkes and the instant case. When the Corps issues a JD, it informs a specific party that it is or is not subject to the Clean Water Act. There is a direct engagement between the two parties concerning a specific tract of land that produces a binding determination with salient and valuable consequences. In this case, the EEOC has not taken any action against Texas — it has issued a general statement of its view of the law. As the D.C. Circuit stated in a similar case:
In these circumstances, to allow [Texas] to institute litigation with the Commission over the lawfulness of its policy would be to preempt the Commission’s discretion to allocate its resources as between this issue and this employer, as opposed to other issues and other employers, as well as its ability to choose the venue for its litigation, as the statute contemplates. See 42 U.S.C. § 2000e-5(f)(1), (f)(3). For the court to find here final agency action subject to judicial review, therefore, would disrupt the administrative process in a manner clearly at odds with the contemplation of the Congress.[50]
These concerns are compounded by Congress’s decision that the Attorney General — not the EEOC — should determine whether and when to act against a state employer. Hence, allowing Texas to proceed not only deprives the EEOC of resources that are designated for enforcement actions against private employers — it interferes with the discretion of one of the highest-ranking members of the Executive Branch. “For the court to find here final agency action subject to judicial review, therefore, would disrupt the administrative process” in more ways than one.
III.
The majority’s opinion is not without purchase, but some basic principles bear repeating:
The Constitution allots the nation’s judicial power to the federal courts. Unless these courts respect the limits of that unique authority, they intrude upon powers vested in the legislative or executive branches. Judicial adherence to the doctrine of the separation of powers preserves the courts for the decision of issues, between litigants, capable of effective determination. Judicial exposition upon political proposals is permissible *396 only when necessary to decide definite issues between litigants. When the courts act continually within these constitutionally imposed boundaries of their power, their ability to perform their function as a balance for the people’s protection against abuse of power by other branches of government remains unimpaired. Should the courts seek to expand their power so as to bring under their jurisdiction ill defined controversies over constitutional issues, they would become the organ of political theories.[51]
This case forcefully demonstrates the importance of respecting the limits of Article III. The State of Texas seeks to challenge an “Enforcement Guidance” that the EEOC lacks the ability to enforce against it. This Court should not allow such a nakedly political suit to proceed. That the Attorney General of a State may wish to jumpstart a political fight with the incumbent political party is far from unusual. It is also without surprise that the State’s suit here extends an invitation to the judiciary to. join the fray. But this is an invitation we must decline. With its “cases” and “controversies” command, Article III walls in and walls out. Chief Justice Marshall taught that we have a duty to decide — but that includes a duty to not do so in the absence of jurisdiction.[52] In dismissing this suit, the district court abided by this duty, a decision which, with due respect to the Texas Attorney General and to our differing roles, if overturned would breach these aged walls. There the matter ought lie until a case or controversy triggers our duty to resolve Texas’s not insubstantial challenge to the EEOC’s view of the law. Until then, the political arena is the appropriate field of contest. I respectfully dissent.

. See Qureshi v. Holder, 663 F.3d 778, 781 (5th Cir. 2011).

. See, e.g., Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012).

. Civil Rights Act of 1964, Pub. L. No. 88-352, tit. VII, 78 Stat. 253, 255 (codified as amended at 42 U.S.C. § 2000e-2(a)(l)).

. Id. Stat. 258 (codified as amended at 42 U.S.C. § 2000e-4(a)).

. Id. Stat. 258-59 (codified as amended at 42 U.S.C. § 2000e-5(b)).

. Id. Stat. 260 (codified as amended at 42 U.S.C. § 2000e-5(f)(l)).

. Id. Stat. 261 (codified as amended at 42 U.S.C. § 2000e-6(a)).

. United States v. Allegheny-Ludlum Indus., Inc., 517 F.2d 826, 843 (5th Cir. 1975).

. 118 Cong. Rec. 4080 (1972) (remarks of Sen. Williams); cf., e.g., United States v. Jacksonville Terminal Co., 451 F.2d 418 (5th Cir. 1971); United States ex rel. Clark v. Dillon Supply Co., 429 F.2d 800 (4th Cir. 1970).

. Gen. Tel. Co. of the Nw. v. EEOC, 446 U.S. 318, 325, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) (quoting S. Rep. No. 92-415, at 4 (1971)).

. Id. at 325-26, 100 S.Ct. 1698.

. Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103, 105 (codified as amended at 42 U.S.C. § 2000e-5(0(1)).

. Id. Stat. 107 (codified as amended at 42 U.S.C. § 2000e-6(c)).

. Id. Stat. 105 (codified as amended at 42 U.S.C. § 2000e-5(0(l))-

. See S. Rep. No. 92-415, at 25 ("This enforcement scheme provides the necessary power to achieve results without the needless friction that might be created by a Federal executive agency issuing orders to sovereign States and their localities.”).

. Raines v. Byrd, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

. Id. (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

. Spokeo, Inc. v. Robins,-U.S. -, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citation omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

. See Lujan, 504 U.S. at 561-62, 112 S.Ct. 2130.

. See 42 U.S.C. § 2000e-5(f)(l).

. See id. ("In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court." (emphasis added)).

. See Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 n. 6, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

. Cf. Univ. of Tex. Sw. Med. Ctr. v. Nassar, -U.S. -, 133 S.Ct. 2517, 2533-34, 186 L.Ed.2d 503 (2013) (concluding that the EEOC’s view was not entitled to any deference).

. See Texas's First Amended Complaint at 3 (citing 42 U.S.C. § 2000e-12(a)).

. 787 F.3d 733 (5th Cir. 2015), aff'd by an equally divided court,-U.S.-, 136 S.Ct. 2271, 195 L.Ed.2d 638 (2016).

. Id. at 749.

. See AT & T Co. v. EEOC, 270 F.3d 973, 975 (D.C. Cir. 2001).

. 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

. Tex. Indep. Producers & Royalty Owners Ass’n v. EPA, 413 F.3d 479, 482 (5th Cir. 2005).

. Ohio Forestry Ass’n v. Sierra Club, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (quoting Abbott Labs., 387 U.S. at 149, 87 S.Ct. 1507).

. Susan B. Anthony List v. Driehaus, - — U.S.-, 134 S.Ct. 2334, 2347, 189 L.Ed.2d 246 (2014) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)); see also Roark & Hardee L.P. v. City of Austin, 522 F.3d 533, 546 (5th Cir. 2008).

. Int’l Longshoremen's & Warehousemen's Union, Local 37 v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 98 L.Ed. 650 (1954); accord Texas v. United States, 523 U.S. 296, 301, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998); Renne v. Geary, 501 U.S. 312, 323, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991).

. Texas’s Opening Brief at 43-44.

. Texas's Reply Brief at 19.

. 523 U.S. at 301, 118 S.Ct. 1257.

. Id.

. See Lopez v. City of Houston, 617 F.3d 336, 342 (5th Cir. 2010) ("[E]ven where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness.” (alteration in original) (quoting Cent. & S.W. Servs., Inc. v. EPA, 220 F.3d 683, 690 (5th Cir. 2000))).

. Texas, 523 U.S. at 300, 118 S.Ct. 1257 (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).

. 387 U.S. 136, 152-53, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); see also Tex. Indep. Producers & Royalty Owners Ass’n v. EPA, 413 F.3d 479, 482 (5th Cir. 2005) ("If there is certainty that the law will be enforced, then it is irrelevant that the law has yet to be enforced, unless the Government demonstrates that the statute itself specifically demonstrates that Congress has prohibited pre-enforcement review.” (emphasis added) (citing Abbott Labs., 387 U.S. at 141, 87 S.Ct. 1507)).

. 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967).

. Id. at 163, 87 S.Ct. 1520; see also Texas, 523 U.S. at 300, 118 S.Ct. 1257.

. Toilet Goods, 387 U.S. at 164, 87 S.Ct. 1520.

. Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citation omitted) (quoting Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948)).

. Id. at 178, 117 S.Ct. 1154 (quoting Port of Bos. Marine Terminal Ass’n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970)).

. -U.S. --, 136 S.Ct. 1807, 195 L.Ed.2d 77 (2016).

. Id. at 1811-12.

. Id. at 1814.

. See id. (citing 33 C.F.R. pt. 331, App. C; EPA, Memorandum of Agreement: Exemptions Under Section 404(F) of the Clean Water Act § VI-A (1989)).

. See Ctr. for Auto Safety v. Nat’l Highway Traffic Safety Admin., 452 F.3d 798, 811 (D.C. Cir. 2006) (“The flaw in appellants’ argument is that the .'consequences’ to which they allude are practical, not legal.... But de facto compliance is not enough to establish that the guidelines have had legal consequences.”).

. AT & T Co. v. EEOC, 270 F.3d 973, 976-77 (D.C. Cir. 2001).

. United Public Workers of America (C.I.O) v. Mitchell, 330 U.S. 75, 90-91, 67 S.Ct. 556, 91 L.Ed. 754 (1947); see also Roark & Hardee L.P. v. City of Austin, 522 F.3d 533, 541-42 (5th Cir. 2008) ("The many doctrines that have fleshed out that 'actual controversy’ requirement — standing, mootness, ripeness, political question, and the like — are 'founded in concern about the proper — and properly limited. — role of the courts in a democratic society.’ ” (quoting Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984))).

. See Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) ("It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should.”).